[Sac. No. 7800.   In Bank.   July 28, 1967.]

CHARLES RICHARD PFEIFER, Plaintiff and Appellant, v. COUNTY OF SAN JOAQUIN, Defendant and Respondent.

Daley, Patridge & Garrett, Richard B. Daley and James M. Garrett for Plaintiff and Appellant.

Mayall, Hurley, Knutsen & Smith and Edwin Mayall for Defendant and Respondent.

Harry S. Fenton, Robert F. Carlson and Kenneth G. Nellis as Amici Curiae on behalf of Defendant and Respondent.

BURKE, J. — Plaintiff in this personal injury action appeals from a judgment of nonsuit granted in favor of defendant County of San Joaquin after plaintiff's evidence had been presented before a jury. An automobile driven by one Garrett struck plaintiff, a pedestrian, as he was attempting to cross a street. He sued both Garrett and the county.[1] As against the county he alleged negligent creation and maintenance of a dangerous condition of the street, which the county denied. The county also asserted the plan or design defense found in section 830.6 of the Government Code. (See fn. 2 of *Cabell* v. *State of California, ante,* p. 151 [60 Cal. Rptr. 476, 430 P.2d 34].) As will appear, we have concluded that the evidence, viewed most favorably to plaintiff, fails to establish the existence of the dangerous condition upon which his claim against the county rests. Accordingly, the judgment must be affirmed.

When the accident occurred plaintiff was undertaking to walk across Alpine Avenue in the County of San Joaquin. The attached diagram illustrates the area.

Alpine is a paved east-west four-lane street, intersected at right angles by Delaware Street. East of Delaware a distance of about two city blocks Franklin Street also intersects Alpine substantially at right angles, slightly offset. Retail establishments were located on both sides of Alpine between Franklin and Delaware. The crosswalk at Delaware was marked, and that at Franklin unmarked. (See Veh. Code, § 275.) At the time of the accident there was no crosswalk between Delaware and Franklin, but there was a railroad right of way with

---

[1]The jury failed to reach a verdict with respect to defendant Garrett, and he is not a party to the appeal.

tracks intersecting Alpine at right angles about halfway between them and at an elevation of about 2½ feet above the level surface of Alpine. Approximately 10 feet west of the tracks two parallel white "limit-lines" were painted across the two eastbound traffic lanes of Alpine to indicate where vehicular traffic should stop when a train was approaching. (See Veh. Code, § 22452, subd. (b).)

There were similar limit lines about 10 feet east of the tracks, across Alpine's two westbound lanes. At some former time there had been a marked pedestrian crosswalk which crossd Alpine about midway between the railroad tracks and Delaware. Several years before plaintiff's accident the county had eliminated this crosswalk and blacked out the white lines marking it. However, the pedestrian crossing warning marks, "PED PED" followed by "XING XING," were not blacked out where they appeared on the pavement of both the eastbound traffic lanes at the intersection of Delaware and Alpine and the westbound traffic lanes at the intersection of Franklin and Alpine.

About 6 o'clock on a cloudy, dark evening in December 1963 plaintiff, aged 78, parked his automobile in a lot on Franklin Street south of Alpine. Intending to mail a letter at a post office on the north side of Alpine plaintiff, accompanied by his 9-year-old grandson, walked west on the south side of Alpine to the white railroad limit lines and started to cross between such lines. There were no street lights; the only lighting was from the stores in the vicinity. Plaintiff had passed the double lines which marked the center of Alpine and was in one of the westbound lanes when he noticed his grandson was not with him. He stopped and turned around to look for his grandson, when the Garrett automobile traveling west on Alpine, struck him. He testified that he was then at a point about 6 feet west of the railroad tracks.

Plaintiff lived about four blocks from the site of the accident and was familiar with the area both as a pedestrian and as a motorist. He testified that he thought the white limit lines marked a pedestrian crossing; that on many occasions he had seen persons crossing at the tracks. However, he did not recall the pavement marks at Franklin Street, warning of a pedestrian crossing ahead.

Garrett, the driver of the car that struck plaintiff, also lived in the vicinity and drove along Alpine and over the railroad crossing almost every evening en route home. He testified that he had seen pedestrians use the railroad crossing to go back

and forth across Alpine, but "no more than I see cross any-place else in the middle of the block." There is no evidence that he believed there was an authorized crosswalk in the area of the railroad crossing, and neither plaintiff nor defendant suggests he was confused.

Other witnesses familiar with the area testified that people cross Alpine at various locations between Delaware and Franklin other than the tracks but "The more cautious ones use the railroad tracks" because "it is higher and you can see better"; that the railroad crossing is used probably as frequently "as some of the regular crosswalks" and "Pretty near anytime you go out there you will see people crossing" at the tracks. Certain of the witnesses stated they knew the railroad was not a crosswalk and that the white limit lines were to stop vehicular traffic when trains were approaching. One witness stated that although he knew the limit lines were stop lines for vehicles, he used the "railroad crossing . . . probably as frequently as I do a crosswalk, not knowing that it wasn't a crosswalk up until the time of this accident," that it looked like a crosswalk to him, that he had noticed the pedestrian crossing warning marks on the pavement at Franklin Street and wondered why the crosswalk at Franklin was not marked by white lines, that "the first white lines you find are the ones at the railroad tracks."

The traffic engineer of defendant county, whose duties were "the maintenance of all the pavement markings, traffic signs, roadway stripping, traffic signals, roadway design, traffic counts, engineering data for design purposes." with respect to the unincorporated areas of the county, testified that in such areas all white lines delineating marked crosswalks extend completely across the street, although in the nearby City of Stockton over whose streets the county has no jurisdiction certain pedestrian lines went only halfway across the street. Pedestrian crosswalks were marked by the county with two single parallel lines, and not with double parallel lines such as the railroad limit lines.[2] Pavement markings warning of a crosswalk are located at varying distances from the cross-walk itself, depending on the area and on existing conditions, "We try to locate them 300 feet, approximately. In most cases, however, there are conditions where we have to adjust accordingly." In the Alpine area here involved the standard

[2] There was other evidence that at school intersections only, certain crosswalks in the City of Stockton were outlined with double white lines,

or normal distance would be between 250 feet and 300 feet, approximately, although the former marked crosswalk across Alpine between the railroad tracks and Delaware Street was more than 500 feet from the pedestrian warning marks on the pavement at the Franklin intersection with Alpine. The pedestrian warnings were not relocated after the former crosswalk was blacked out because if they had been put on the other side of the railroad tracks they would be too close to the marked crosswalks at the Delaware intersection and not provide sufficient advance warning to motorists approaching on a downgrade from the tracks; further, stated the witness, "In some cases we have these pedestrian crossings [pavement markings] a thousand feet in advance because of the road and speed of the road. . . . We are not required to install them, but we did in this case."

Although the Vehicle Code (see § 21368) designates the color of paint to be used for certain types of crosswalks, the sizes or dimensions of markings for pedestrian crosswalks are not prescribed by statute. In general, the county followed two government instruction manuals published on the subject.

█ Government Code section 830, subdivision (a),[3] defines "dangerous condition" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." In other words, as noted in *Teall* v. *City of Cudahy* (1963) 60 Cal.2d 431, 433-434 [34 Cal.Rptr. 869, 386 P.2d 493], "Public property is in a dangerous or defective condition when it involves an unreasonable risk of injury to the public." (See also § 830.2.)[4]

█ Plaintiff urges that the action of defendant county in maintaining the pedestrian warning sign on the pavement at the intersection of Franklin with Alpine created a dangerous condition for which the county is liable under section 835

---

[3]All section references hereinafter are to the Government Code unless otherwise stated.

[4]Section 830.2: "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."

of the Government Code by leading a substantial number of pedestrians to believe that the railroad limit lines were a pedestrian crossing; that as a consequence the area where the accident occurred was customarily and constantly used as a pedestrian crossing; that plaintiff observed such customary use, thought he had the protection of an authorized crosswalk, and conducted himself accordingly; and that the evidence viewed in the light most favorable to plaintiff, as is required when considering a nonsuit (*Reuther* v. *Viall* (1965) 62 Cal.2d 470, 474-475 [3] [42 Cal.Rptr. 456, 398 P.2d 792], and cases there cited), would support a verdict in his favor.

Plaintiff concedes the purpose of the railroad limit lines (see Veh. Code, § 22452, subd. (b)), and expressly disclaims any contention that maintaining them was an act of negligence by the county. However, plaintiff argues that when the county eliminated the old crosswalk between the tracks and Delaware but retained the advance pedestrian pavement warnings at Franklin it created a situation which was misleading and dangerous to members of the public because, according to plaintiff, the pavement warnings at Franklin could thereafter reasonably refer to the white limit lines at the railroad crossing.

At least one difficulty with this argument is that elimination of the old crosswalk did not change the relationship between the railroad limit lines and the pavement warnings at Franklin. Whether or not there was an authorized and marked pedestrian crosswalk between the tracks and Delaware, the railroad limit lines were the first white lines west of the Franklin intersection. Additionally, we are persuaded that no pedestrian could reasonably believe the limit lines at the railroad tracks indicated an authorized crosswalk, either before or after obliteration of the old crosswalk and whether or not there were pavement warnings at Franklin. Although many persons crossed Alpine at the tracks as well as at other locations between Delaware and Franklin, no witness except plaintiff declared that he believed the limit lines to be a crosswalk. The one other witness who stated he did not know until plaintiff's accident that the "railroad crossing" was not a crosswalk, also declared that he knew the limit lines were to stop vehicular traffic. The mere happening of plaintiff's accident is not of itself evidence of a dangerous condition of public property. (§ 830.5, subd. (a).)[5]

---

[5]Section 830.5: "(a) Except where the doctrine of res ipsa loquitur is applicable, the happening of the accident which results in the injury is

Plaintiff suggests that the county could have posted a sign warning pedestrians that the limit lines did not indicate an authorized crosswalk, and refers to the second sentence of section 830.8. (See fn. 8 of *Becker* v. *Johnston, ante,* p. 172 [60 Cal.Rptr. 485, 430 P.2d 43].) However, the provisions of that sentence do not come into play until existence of a "dangerous condition" within the statutory definition is first shown.[6]

Cases cited by the respective parties differ factually and are not persuasive with respect to the condition of which plaintiff here complains. However, for the reasons stated above, it is our view that no reasonable person would conclude that such condition created an unreasonable risk of injury to the public. Accordingly, we do not reach the question of the plan or design defense urged by the county.

The judgment of nonsuit is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Schauer, J.,* and Draper, J. pro tem.,† concurred.

---

not in and of itself evidence that public property was in a dangerous condition."

[6]We note also that such a sign as plaintiff suggests seems not to be a sign or device described in the Vehicle Code and mentioned in section 830.8. Section 275 of the Vehicle Code after first defining crosswalks does refer to a "no crossing" sign which local authorities may employ to designate that an area *defined in that section* as a crosswalk shall not be a crosswalk, but the railroad crossing limit lines here involved do not fall within the definition.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

†Assigned by the Chairman of the Judicial Council.