[Civ. No. 57261. Second Dist., Div. Two. Oct. 23, 1980.]

CARY LEE BUNKER, Plaintiff and Respondent, v.
CITY OF GLENDALE, Defendant and Appellant.

COUNSEL

Frank R. Manzano, City Attorney, and Dennis H. Schuck, Assistant City Attorney, for Defendant and Appellant.

Robert Feinstein, Russell Iungerich and Judith M. Mitchell for Plaintiff and Respondent.

OPINION

FLEMING, J.—Defendant City of Glendale appeals a judgment in favor of plaintiff Cary Lee Bunker in an action for personal injuries and property damage.

At 10 p.m. on August 5, 1972, Bunker was riding his motorcycle up a steep hill on Adams Street in Glendale. As Bunker was approaching the top of the hill, Lillie Minor was backing her vehicle out of a driveway on the far side of the hill 55 feet below the crest. Because of the steepness of the hill of the grade, Bunker was unable to see Minor's vehicle until he reached the top of the hill, at which time he was traveling 25 to 30 miles per hour. At that speed he was unable to stop in sufficient time to avoid a collision with Minor's vehicle. The posted speed limit on Adams Street was 25 miles per hour. However, approximately 500 feet before the crest of the hill there was a sign which advised motorists to "Slow To 15 Miles an Hour."

Bunker later commenced this action against the City of Glendale and Lillie Minor. Minor settled with Bunker prior to trial. City's motion for summary judgment on the ground it was immune from liability was denied. (Gov. Code, §§ 830.4, 830.8.) In a special verdict the jury found that city knew and failed to warn of a dangerous condition, and it as-

sessed Bunker's damages at $100,000. However, the jury also found that Bunker, who had driven over the hill on many other occasions prior to the accident was contributorily negligent, and it fixed his liability at 44 percent, apportioning the remaining 56 percent to city. The verdict of $56,000 against city was reduced by the $25,000 Bunker had received in his settlement with Minor, and judgment was entered for Bunker for $31,000. On appeal, city contends (1) there was insufficient evidence to support the jury's finding that city failed to warn of a dangerous condition, and (2) the trial court erred in denying city's motion for a mistrial due to juror misconduct.

■ 1. Generally, a public entity is liable for injury caused by the dangerous condition of its property if the entity had notice of the danger and failed to take appropriate measures to warn of or remedy the condition. (Gov. Code, § 835; *Slapin* v. *Los Angeles International Airport* (1976) 65 Cal.App.3d 484, 488 [135 Cal.Rptr. 296].) At bench, city does not contest the fact that the lack of visibility on Adams Street constituted a dangerous condition. However, city argues that the sign advising motorists to "Slow to 15 Miles an Hour" gave sufficient warning of the danger, and that Bunker could have avoided the collision if he had conformed his speed to that advised by the sign. City also contends, citing Government Code section 830.4, that even if the sign did not give sufficient warning of the danger, failure to post an adequate sign cannot furnish a basis for imposition of liability upon a public entity.

Government Code section 830.4 states that the absence of traffic control signals or signs does not in itself make a condition a dangerous one. However, when a dangerous condition exists which would not be reasonably apparent to, or anticipated by, a person exercising due care, and a sign is necessary to warn of the condition, the public entity's failure to provide such a sign may provide a basis for imposition of liability against the public entity. (Gov. Code, § 830.8; *Cameron* v. *State of California* (1972) 7 Cal.3d 318 [102 Cal.Rptr. 305, 497 P.2d 777]; *Anderson* v. *City of Thousand Oaks* (1976) 65 Cal.App.3d 82 [135 Cal. Rptr. 127].) At bench, the sign which advised oncoming traffic to slow to 15 miles per hour was sited 3 intersections away from, and approximately 500 feet below, the crest of the hill. There was evidence that motorists could not tell whether the warning applied to the intersections or to the grade of the hill. The jury's conclusion that the city failed to warn motorists about a dangerous condition is supported by evidence

which, if not exactly overwhelming, squeaks by the current standard for substantiality of evidence.

2. City asserts that its motion for a mistrial based on juror misconduct was erroneously denied. During jury deliberations 9 of the 12 jurors agreed that city and Bunker were liable for the accident. In apportioning liability, the nine jurors added up the figures each had arrived at individually and then divided the total by nine. City contends this procedure produced an improper quotient verdict. (See *Bardessono v. Michels* (1970) 3 Cal.3d 780, 794 [91 Cal.Rptr. 760, 478 P.2d 480, 45 A.L.R.3d 717].) But a verdict based upon a quotient figure is not improper, if, after the quotient figure has been computed, the jurors are polled, and each agrees that the tentative figure arrived at represents a proper distribution of responsibility among the respective parties. (See *Bardessono v. Michels, supra*, at pp. 794-795.) Bunker presented six jurors' declarations stating that the jurors had not agreed in advance to be bound by the quotient figure and had adopted that figure as their verdict only after further discussion and balloting. City presented other jurors' declarations stating that agreement had been reached in advance to adopt whatever figure resulted from the quotient process. Where declarations conflict, the trial judge's determination as to which set of declarations he finds credible will not be disturbed on appeal. (*Weathers v. Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 108 [95 Cal.Rptr. 516, 485 P.2d 1132].)

City's final contention about jury irregularities during deliberations is without merit.

The judgment is affirmed.

Roth, P. J., concurred.

**BEACH, J.**—I dissent.

A public entity is not liable for injury to persons except as provided by statute. (Gov. Code, § 815.)[1] Statutory liability is imposed for injury resulting from the public entity's creation, or its failure to warn, of a "dangerous condition" on or near its property. (§ 835.) However, the "dangerous condition" does not include property which is safe when

[1] All references hereafter to code sections are references to the Government Code unless otherwise indicated.

used in a reasonably foreseeable manner with *due care* and is dangerous only if used without due care. (§ 830.) Moreover, even when property is used with due care, a minor risk of injury does not create liability. The risk must be substantial. (§ 830.)

There was no substantial evidence that there was a dangerous condition or that the city failed to warn of such condition and that such failure was the proximate cause of the accident here. The city was entitled to a directed verdict in its favor.

Admittedly, disputed issues regarding dangerous conditions (including the degree of risk and exposure of harm to those using care) usually present questions of fact and therefore are for the jury to decide. (*Cameron* v. *State of California* (1972) 7 Cal.3d 318 [102 Cal.Rptr. 305, 497 P.2d 777]; *Harland* v. *State of California* (1977) 75 Cal.App.3d 475 [142 Cal.Rptr. 201]; *County of Ventura* v. *City of Camarillo* (1978) 80 Cal.App.3d 1019 [144 Cal.Rptr. 296].) Nonetheless, such a determination by a jury must be supported by substantial, relevant evidence. Moreover, where the essential facts pleaded or established are not in dispute, it remains the statutory duty of the trial and appellate courts (§ 830.2), viewing the evidence most favorably to the plaintiff, to determine as a matter of law whether any risk created by the condition was a minor one and whether any reasonable person would conclude that the condition created a substantial risk if the property was used with due care. (§ 830.2.) Accordingly, it is no answer under the circumstances here to say that the jury "found" a dangerous condition. This court must examine the evidence and determine therefrom whether it is *relevant*, as well as substantial enough to support not only the findings of fact but also the legal conclusions drawn therefrom. The record at bench establishes as a matter of law there was no dangerous condition. This determination may be, and here must be, made as a matter of law. (*McKray* v. *State of California* (1977) 74 Cal.App.3d 59 [141 Cal.Rptr. 280]; *Fielder* v. *City of Glendale* (1977) 71 Cal.App.3d 719 [139 Cal.Rptr. 876]; *Van Kempen* v. *Hayward Area Park etc. Dist.* (1972) 23 Cal.App.3d 822 [100 Cal.Rptr. 498]; *Callahan* v. *City & County of San Francisco* (1971) 15 Cal.App.3d 374 [93 Cal.Rptr. 122]; *Goss* v. *State of California* (1978) 82 Cal.App.3d 426 [147 Cal. Rptr. 110]; *Pfeifer* v. *County of San Joaquin* (1967) 67 Cal.2d 177 [60 Cal.Rptr. 493, 430 P.2d 51]; *Smith* v. *City of San Jose* (1965) 238 Cal.App.2d 599 [48 Cal.Rptr. 108]; see also Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) pp. 194-196, 205.)

Accepting at bench all of plaintiff's evidence relative to the physical features, the entire testimony, including that of the alleged experts, when reduced to simple yet adequate terms discloses the presence of an ordinary city street which ascends a hill, continues on over the crest and down the other side. The facts disclose further that a motorist ascending the hill cannot see what is on the other side. There is nothing more than that as to the alleged "dangerous condition." A school child knows that a person driving up a hill cannot see what is on the other side.

An ordinary, natural topographical condition is not a dangerous condition of property within the meaning of the Governmental Tort Liability Law. It is such and requires a warning sign only when it constitutes a deceptive condition or trap for even those who use the property with due care. (§ 830.8 and com. of Law Revision Commission to § 830.8, 32 West's Ann. Code (1980 ed.) p. 289.) Admittedly, the dangerous condition need not be artificial, manmade or unnatural. Certain natural conditions, when allowed to remain, can create legally recognized dangerous conditions. Examples thereof are permitting trees and shrubs to obscure stop signs or warning signs which indicate the end of a road or unseen ditch or hazardous intersection, or allowing mud to slide and remain in an unexpected location in the road. (See e.g., *De la Rosa* v. *City of San Bernardino* (1971) 16 Cal.App.3d 739 [94 Cal.Rptr. 175]; *Bakity* v. *County of Riverside* (1970) 12 Cal.App.3d 24 [90 Cal.Rptr. 541]; *Briggs* v. *State of California* (1971) 14 Cal.App.3d 489 [92 Cal.Rptr. 433].) Lengthy discussion is not necessary to explain that these kinds of natural conditions, which easily can be remedied, are different from a natural geographic feature of the lay of the land which is accepted and to which the highway is adapted.

The intent of the statute is to impose liability only when there is a substantial danger which is not apparent to those using the property in a reasonably foreseeable manner with due care. Moreover, the particular defect must be the *proximate* cause of the accident. (§ 835; *Hayes* v. *State of California* (1974) 11 Cal.3d 469 [113 Cal.Rptr. 599, 521 P.2d 855]; *McKray* v. *State of California, supra,* 74 Cal.App.3d 59; see Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) pp. 222-226.) *"...any property can be dangerous if used in a sufficiently abnormal manner.* Thus, a public entity should not be liable for injuries resulting from the use of a highway—safe for use at 65—at 90

miles an hour, even though it may be foreseeable that persons will drive that fast. The public entity should only be required to provide a highway that is safe for reasonably foreseeable *careful* use." (*Fuller* v. *State of California* (1975) 51 Cal.App.3d 926, 940 [125 Cal.Rptr. 586], quoting from Cal. Law Revision Com. Rep. (1963) p. 822, [italics are the court's in *Fuller*].) Relative to whether the condition at bench is or is not a dangerous condition, plaintiff's claim is not so much that the city created a dangerous condition but that it allowed a dangerous condition to exist. The evidence clearly indicates that plaintiff cannot premise his claim on the basis that the city created a dangerous condition. All that the city ever did was to pave the street on the hill. Thus it follows plaintiff's principal thrust is that a dangerous condition existed and the city failed to warn motorists thereof with an appropriate warning sign. Under the law that condition imposes liability only if it constitutes a *trap* for the careful user. (§ 830.8.)

Cases holding public entities liable for failure to warn of dangerous conditions, including those relied upon in the majority opinion, are based on the presence of an actual dangerous physical defect or an otherwise dangerous condition which was not apparent to persons using the property with due care. *Slapin* v. *Los Angeles International Airport* (1976) 65 Cal.App.3d 484 [135 Cal.Rptr. 296]; *Quelvog* v. *City of Long Beach* (1970) 6 Cal.App.3d 584 [86 Cal.Rptr. 127], are examples. In all such cases, however, the inability of any user to see or appreciate the danger remained a constant feature of the property whether used by careless or by careful users (i.e., the trap). (For example, *Cameron* v. *State of California, supra,* 7 Cal.3d 318, a deceptive S-curve with unexpected and abrupt super elevation; *Baldwin* v. *State of California* (1972) 6 Cal.3d 424 [99 Cal.Rptr. 145, 491 P.2d 1121], danger of rear-end collision while waiting in left lane for a turn; *Anderson* v. *City of Thousand Oaks* (1976) 65 Cal.App.3d 82 [135 Cal.Rptr. 127], deceptively sharp curve with unexpected change in super elevation.) The condition at bench is simply the existence of an ordinary highway over a hill, unlike nearly all other highway trap cases. The condition of the highway contains no unseen or deceptive dip or bump in the road or other physical feature suddenly affecting the operation of any vehicle. Here the condition of which plaintiff complains was and is apparent to all users. The condition is the hill itself and that feature itself, as explained earlier, informs the motorist that he cannot see what may be on the other side. Its presence gives immediate notice to the person using care to slow down for the unseen part of the highway.

A motorist is not entitled to ignore the notice which the condition itself gives. This condition is in legal contemplation no different than many other natural conditions such as fog, rain, or dusty wind which obscures the vision or knowledge of that which may lie ahead. A public entity is not liable for the presence of such natural conditions which in themselves give notice or warning. (*Belcher* v. *City and County of S. F.* (1945) 69 Cal.App.2d 457 [158 P.2d 996]; *Marino* v. *County of Tuolumne* (1953) 118 Cal.App.2d 675 [258 P.2d 540]; see Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) pp. 222-226.)

The accident in the case before us was not caused by any dangerous condition. The proximate and sole legal cause of this accident was plaintiff's own conduct. Plaintiff had traveled over this same street at this location approximately 180 times over the past 5 years. On this night he had been drinking, ignored the sign to slow to 15 miles per hour, ignored the obvious need to use due care by slowing as he approached the crest beyond which he could not see and continued to travel between 25 and 30 miles per hour, a speed which was unsafe.

The issue of the existence and placement of the warning sign in this case is irrelevant. It is a red herring. In the first place, it does not constitute an admission or legal recognition by the city of the existence of a dangerous condition. Judicial notice can be taken of the hundreds of unfounded tort claims against public entities based on nothing more than the fact that the accident occurred on a public street. The city is entitled to reduce the risk of litigation by placing warning signs even though not legally obligated to do so. This extra caution needed only by foolish and reckless drivers (and ignored by most) should not be used to impose liability upon the city.

The second aspect of the irrelevancy of the sign is that all of the so-called expert testimony regarding "sight distance" (meaning you cannot see through a solid object) and regarding the need for lights at the top of the hill and where therefore to place the warning sign was all irrelevant in this case. Even though the testimony as to the location of the warning sign might have been relevant with reference to a motorist traveling the street for the first time, the warning sign had no effect on plaintiff's conduct in this case whatever. It did not "fail" to warn him; it did not confuse him; his conduct was taken totally without regard to the sign. Plaintiff knew that he was traveling up a hill beyond whose crest he could not see. He had traveled this route many times. He knew of

the presence of dwellings on the other side. He was not misled by any physical condition or anything else. He was not induced to act by the presence or the location of the sign. There was not one word of testimony that plaintiff relied on the sign in any way! Thus, all the testimony, whether the sign was confusing or not and whether it should have been at 500 feet away or closer to the crest, is irrelevant. The sign played no part in leading plaintiff into any area or to making any decision at all. More importantly, it did not lead him into any trap.

Section 830, subdivision (a) states: "'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." The judicial adoption of the doctrine of comparative negligence in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], subsequent to the reinactment of the governmental tort statutes, does not necessarily mean that the definition of a dangerous condition of public property must eliminate reference to the use of such property with *due care*. The matter has not been squarely presented and passed upon in this state. In *Levine* v. *City of Los Angeles* (1977) 68 Cal.App.3d 481 [137 Cal.Rptr. 512], the court held that the doctrine of comparative negligence may be applied to a case of governmental statutory liability based on a dangerous condition of property. Thus, lack of due care by the plaintiff did not totally bar his right of recovery in *Levine*.

But there is a difference. *Li* and *Levine* refer to *comparative* negligence. That concept presupposes that there is independent negligence on both sides and which is to be compared one to the other.

Under the facts at bench and under the definition of section 830, there was no negligence on the part of the city. It neither caused the accident nor created the hill nor did it fail to warn plaintiff of some inherently dangerous condition. Nothing that the city did or failed to do was in any way the proximate cause of the accident. The physical properties of the road became dangerous only when misused. Thus, the situation is not one which involved comparative negligence but involved the negligence of the plaintiff as the sole and proximate cause of the accident and which alone created the dangerous situation. This is not a case of negligence, which allowed a dangerous condition of property, being

compared to its negligent use by plaintiff. Nor is it the foreseeably negligent user being led into a trap. No trap existed. Plaintiff knew of the condition and plaintiff created the sole risk of injury. (See Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) pp. 180-181.)

To permit this judgment to stand is: (1) to impose strict liability on the city as an insurer of the safety of its streets; (2) to wrongfully permit a jury to decide a legal question of proximate cause, to define "dangerous condition," to second-guess the exclusive statutory legislative authority of the city regarding the need for and placement of traffic regulation or warning signs (whether relevant to the case or not); and (3) to permit an injustice to taxpayers of Glendale who must pay for the injuries of plaintiff brought on solely by his reckless disregard for his own safety. I would reverse the judgment.

A petition for a rehearing was denied November 19, 1980. Beach, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied December 17, 1980. Clark, J., was of the opinion that the petition should be granted.