[Civ. No. 23157. Third Dist. Feb. 28, 1986.]

CONSTANCE B., Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA ex rel. DEPARTMENT OF
TRANSPORTATION, Defendant and Respondent.

**COUNSEL**

Patrick R. Beasley for Plaintiff and Appellant.

Robert F. Carlson, Joseph A. Montoya, Ronald I. Harrison, John L. Sullivan, Gail D. Ohanesian, and Milton B. Kane for Defendant and Respondent.

**OPINION**

**BLEASE, J.**—Plaintiff, Constance B., appeals from a summary judgment in favor of defendant, State of California. The issue is whether, on the material facts presented below, the state may be held liable for failure to undertake security measures to protect plaintiff from a criminal assault at a

state-owned highway roadside rest area.[1] The answer is no. We will affirm the judgment.

## FACTS

The Dunnigan rest stop on Interstate 5 was constructed in 1967 or 1968 from plans prepared by the State Department of Architecture at the site of a grove of eucalyptus trees. The restroom building is located approximately 15 yards east of the parking area. The north half of the building is the women's restroom and the entrance is at the northwest corner of the building. The area between the parking lot and the restroom building is dark, but the outside walls of the building are "well illuminated."

On September 10, 1979, at 12:30 a.m., plaintiff, while driving to Redding, stopped at the northbound Dunnigan facility. She walked from her car to the restroom building. As she approached the women's restroom, she saw Cameron Piles standing at the northeast corner of the building. He stared at her. Another woman came out of the restroom and plaintiff entered. She went into the first stall. When she came out Piles was in the restroom. He beat her viciously, threatened to kill her with the knife he brandished, and forced her to submit to a sexual assault.[2]

Plaintiff filed this action claiming liability of the state for the injuries she suffered from the assault. Her complaint alleges that the rest stop was in a dangerous and defective condition because of improper patrolling, improper lighting, improper maintenance, and insufficient visibility. She alleges that, as a result of the condition of the premises, Piles was able to conceal himself in a place adjacent to the women's restroom, to follow her into the restroom unnoticed, and to attack her.

The state moved for summary judgment on the ground that it had no duty to undertake security measures. The state's showing consisted of the foregoing facts and evidence that no similar incidents had occurred at the Dunnigan rest stop or at any rest stop in the 11-county administrative district of which the Dunnigan facility is a part.

---

[1] In a prior unpublished opinion we concluded there is no such duty based upon case law holding that, in the absence of prior similar incidents, a landowner has no duty to undertake security measures. This rule was disapproved in *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 125-126 [211 Cal.Rptr. 356, 695 P.2d 653], and this case was remanded to us for reconsideration.

[2] A bystander, George Kassal, heard plaintiff scream and trailed Piles to his car when Piles fled. Kassal noted the license plate number. Piles was later apprehended and ultimately sentenced to state prison for the crime.

Plaintiff tendered a countershowing that two previous daylight thefts had occurred at the Dunnigan rest stop. Plaintiff also introduced a declaration of a "security consultant" that, in his opinion, placement of the restroom facilities at the Dunnigan rest stop presents "obvious and serious security risks for users . . . ." The consultant cited the following "risks": the placement of the lights and trees cast heavy shadows at night; the restroom building is too far from the parking lot to provide adequate surveillance by other users; the side entrances to the building result in blocked visibility of the entrance by other users; the bulletin board is placed adjacent to the men's restroom [which distracts attention from the women's restroom]; and the building is constructed five feet below the grade of the freeway and "buffered" from sight by numerous trees which obscure vision. This appeal followed a judgment for the state.

### Discussion

### I

The liability of the state is established by statute. (Gov. Code, § 815, subd. (a).) Plaintiff's complaint tenders a single cognizable theory of liability, personal injury caused by a dangerous condition of the state's property. "[A] public entity is [only] liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred . . . ." (Gov. Code, § 835.) " 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (Gov. Code, § 830, subd. (a).) The material facts produced at the summary judgment proceedings show there was no dangerous condition of property at the rest stop.

Plaintiff's claim of liability is predicated upon the notion that the state provided an opportunity for misconduct by a third party. "There are a number of situations in the law of negligence and breach of statutory duty . . . where a defendant is liable for providing or not removing the opportunity for another to do harm or for a natural event to cause it. The 'causal connexion [*sic*]' between a defendant's act and the harm may be succinctly described by saying that he has 'occasioned' it." (Hart & Honore, Causation in the Law (1959) p. 179.) ■ "Occasioning" harm by maintaining public property in a manner which increases the risk of a criminal assault may

give rise to liability under Government Code section 835. In *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799 [205 Cal.Rptr. 842, 685 P.2d 1193], an assailant jumped from behind thick untrimmed foliage and trees adjoining the college's stairway to a parking lot and attempted to rape the plaintiff. This modus operandi had previously been used in sexual assaults on the campus. The Supreme Court held that plaintiff stated a cause of action for harm occasioned by a dangerous condition of public property.

We turn to *Isaacs* v. *Huntington Memorial Hospital, supra,* 38 Cal.3d 112 for guidance on the measure of the duty to avoid "occasioning" the assault on plaintiff. The duty arises here, if at all, from "the special relationship between the landowner and the invitee (see Rest.2d Torts, §§ 314A, 315) and the general duty to exercise reasonable care in the management of one's property . . . ." (*Isaacs, supra,* 38 Cal.3d at pp. 123-124, citations and fn. omitted.) ■ *Isaacs* quotes with emphatic approval the following equivocal language regarding this duty from the Restatement Second of Torts section 344, comment *f: "If the place or character of [a landowner's] business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it . . . ."* (*Id.,* at p. 124, original italics.) On the question whether it is reasonable to anticipate such conduct *Isaacs* cautions that "Foreseeability ' "is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct." [Citation.] One may be held accountable for creating even " 'the risk of a slight possibility of injury if a reasonably prudent [person] would not do so.' " ' " (*Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d at p. 57.)" (*Id.,* at p. 126.)

■ The state contends that there is no duty whatever to take precautions against assaults at roadside rest areas because such conduct is unforeseeable. We are constrained by *Isaacs* to disagree. The operation of such a facility open to the public at night may be said to have "creat[ed] an 'especial temptation and opportunity for criminal misconduct . . . .' " (See *Isaacs, supra,* at p. 130, quoting from Prosser, Torts (4th ed. 1971) § 33, p. 174.) The state's rest stops are open for public use at all hours of the day and night. Obviously, at times the ebb and flow of traffic will isolate small numbers of users at a stop. The motoring public includes a portion of the criminal element of our society. It is dismally predictable that where there are highways there will be highwaymen—and worse. It is predictable that such malefactors will take criminal opportunities in the course of their travels. We cannot conclude that the degree of predictability of criminal assaults under cover of darkness at rest stops is so low that a reasonably thoughtful

administrator would *never* have a duty to anticipate such conduct and take account of it in guiding practical conduct concerning matters that might enhance the security of innocent users.

## II

However, that does not end the analysis. This abstraction achieves life only in the facts of a case. ■ "Actionable negligence involves a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury. [Citation.] The duty of care [is] always related to 'some circumstance of time, place and person' . . . ." (See *United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770].) ■ "Breach of duty is usually a fact issue for the jury; if the circumstances permit a reasonable doubt whether the defendant's conduct violates the standard of due care, the doubt must be resolved by the jury as an issue of fact rather than of law by the court. [Citation.]" (*Musgrove* v. *Ambrose Properties* (1978) 87 Cal.App.3d 44, 53 [150 Cal.Rptr. 722]; cited with apparent approval in *Isaacs, supra,* 38 Cal.3d at p. 131; also see e.g. *Mosley* v. *Arden Farms Co.* (1945) 26 Cal.2d 213, 217 [157 P.2d 372, 158 A.L.R. 872].) ■ Similarly, "[g]iven a breach of duty by the defendant, the decision whether that breach *caused* the damage (that is, causation in fact) is again within the jury's domain; but where reasonable men will not dispute the absence of causality, the court may take the decision from the jury and treat the question as one of law. [Citations.]" (See *Starr* v. *Mooslin* (1971) 14 Cal.App.3d 988, 998 [92 Cal.Rptr. 583]; also see Rest.2d Torts, §§ 433b, 434, italics added.)

The standard is high for finding as a matter of law that the material facts show a lack of causality or breach of duty, but it is not unmeetable. (See e.g. *Pfeifer* v. *County of San Joaquin* (1967) 67 Cal.2d 177 [60 Cal.Rptr. 493, 430 P.2d 51]; *Barrett* v. *City of Claremont* (1953) 41 Cal.2d 70 [256 P.2d 977]; *Smith* v. *City of San Jose* (1965) 238 Cal.App.2d 599 [48 Cal.Rptr. 108].) In this regard we are mindful of the observation of Justice Frankfurter in his concurring opinion in *Wilkerson* v. *McCarthy* (1948) 336 U.S. 53, 65 [93 L.Ed. 497, 506]; "The easy but timid way out for a trial judge is to leave all cases tried to a jury for jury determination, but in so doing he fails in his duty to take a case from the jury when the evidence would not warrant a verdict by it. A timid judge, like a biased judge, is intrinsically a lawless judge." (Also see Gov. Code, § 830.2, and the law revision comment to it which suggests that § 830.2 "is included in the chapter to emphasize that the courts are required to determine that there is evidence from which a reasonable person could conclude that a substantial, as

opposed to a possible, risk is involved before they may permit the jury to find that a condition is dangerous.'')

The issues of duty and causality intertwine. ▮ The state is only "liable for injury caused by a dangerous condition of its property [if, inter alia,] the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred . . . ." (Gov. Code, § 835.) This says that the injury must be causally related to the condition such that the harm which in fact occurred ("was incurred") is of the *kind* which can be "created" or caused by the condition. It is another way of saying that the dangerous condition must be a "necessary condition of such harm." (Hart & Honore, *supra,* at p. 257.) The risk that that will happen must also be foreseeable. "What we call a cause typically is . . . what makes the difference in relation to some assumed background or causal field." (Mackie, The Cement of the Universe, A Study in Causation (1980) p. xi.) The causal field here is the condition of the property. It is claimed that certain physical features made a difference whether the rape would occur. That is another way of saying that the physical conditions were *a* cause of sexual assault. (This allows for concurrent causes, including third party intervention.) Thus, the predicate for liability is a causal relation between injuries of the kind which did occur and the claimed dangerous condition. That requires that we examine the way in which the sexual assault occurred as shown by the summary judgment papers.

## III

Here, plaintiff tenders five conditions of the Dunnigan rest stop as causal factors in the assault, i.e., factors in the absence of which a sexual assault would not have occurred.[3] This entails the claim that the state was liable for failing to "protect against" these conditions as that term is defined in Government Code section 830, subdivision (b).[4] Four of these conditions implicate causation as an aspect of duty, the fifth as an aspect of proximate cause.

▮ Plaintiff contends the restroom building is too far from the parking lot to provide adequate surveillance by other users. We deem this an insubstantial risk factor as a matter of law. "It is well settled that one test for

---

[3]Plaintiff concedes that the state had no duty to patrol the premises. (See Gov. Code, § 845; *Peterson, supra,* 36 Cal.3d at pp. 814-815.)

[4]Government Code section 830, subdivision (b) defines this term as: " 'Protect against' includes repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition." We note in passing that the utility of a "rest" stop would be considerably impaired by a sign warning its users of the risk of sexual assault. (Compare *Hayes* v. *State of California* (1974) 11 Cal.3d 469, 472-473 [113 Cal.Rptr. 599, 521 P.2d 855].)

determining the issue of negligence is whether a person of ordinary prudence should have foreseen or anticipated that someone might be injured by his action or nonaction." (*Mosley* v. *Arden Farms Co.*, *supra*, 26 Cal.2d at p. 216.) ■ Analogously, a dangerous condition of public property must be one which a person of ordinary prudence should have foreseen would appreciably enhance the risk of harm. This is a second facet of foreseeability, not the foreseeability that a criminal may take advantage of the inherent opportunity afforded by the nature of rest areas, but the foreseeability that some *remediable* condition of the facility might 'occasion' such a criminal act.

■ Here the parking area is 15 yards from the restroom. Neither vision nor hearing is appreciably diminished by the increment of such a displacement. Even with the vantage point of hindsight and a focused claim by an injured plaintiff we doubt this condition could be reasonably found a "but for" cause of the assault.[5] There is no proximate or legal causation in these circumstances unless there is "but for" causation. (See Rest.2d Torts, § 432.) This remote prospect of proving legal causation after the fact bears in this case on the issue of ordinary care before the fact. It is wholly unlikely that a reasonably prudent institutional landlord would be able to identify this circumstance as a risk factor. We find no reasonable trier of fact could conclude that failure to remedy this condition was a breach of the duty of ordinary care. This circumstance, alone or in conjunction with the others tendered, was not a dangerous condition of the roadside rest.

That the entrances to the restroom were on the side of the building rather than the front is the next claim. In this configuration the northeast corner of the restroom might be viewed, post hoc, as a coign of vantage. It affords an assailant a position for observation of possible victims and a route to the secluded confines of the restroom that is partially screened from the likely viewpoints of other users of the facility. ■ Nonetheless, the duty of the landowner is only to take reasonable precautions against risks which are or should be recognized. (See Rest.2d Torts, § 289.) The foundation of liability is the "omission to take a common precaution against a common danger . . . ." (See Hart & Honore, *supra*, at p. 55.) A latent condition that would not be perceived as dangerous in the exercise of due care by a reasonably prudent landlord does not present a substantial risk of injury. (See Rest.2d Torts, § 289.) ■ No reasonable fact-finder could conclude that the state should have recognized that side entrances to restrooms would increase the risk of criminal activity. We distinguish this case from

---

[5]At the margin it is a policy question whether a trier of fact should be permitted to infer but-for causality. Even the but-for cause concept is imbued with policy considerations. (See Malone, *Ruminations on Cause-In-Fact* (1956) 9 Stan.L.Rev. 60, 72-75.)

*Peterson, supra,* 36 Cal.3d 799, on the ground that here there is no prior use of the condition claimed to be dangerous in the modus operandi of assailants.

The remaining claims implicating duty do not warrant protracted discussion. There is no basis to infer that the location of the bulletin board was a causal factor in this incident. Moreover, we deem any enhancement of risk attributable to this condition as trivial for reasons similar to those regarding the remote parking lot and side entrance claims. That the facility is on a site below the grade of the freeway is also a makeweight claim. The prospect that persons in vehicles traveling at freeway speed, at night, who had passed the entryway of the rest area would be more likely to perceive or to respond to the event of a person walking or even running toward a restroom building if the facility were not below grade is insubstantial. Liability could not be reasonably predicated upon this condition because it could not reasonably be found to increase the risk of criminal misconduct.

## IV

That leaves the claim that the dangerous condition was the placement of lights and trees so as to produce heavy shadows at night near the women's room which would provide concealment for a malefactor. On the factual showing this tenders an issue of proximate cause. A public entity is liable only if "the injury [which did occur] was proximately caused by the dangerous condition . . . ." (Gov. Code, § 835.)

The function of the court and the jury as pertains to proximate cause is succinctly delineated in section 434 of the Restatement Second of Torts. "The question of what actually occurred in any particular case is for the jury, unless this is agreed upon, admitted by the pleadings, or found by special verdict, or unless the testimony is so undisputed and uncontradictory that there is only one inference which reasonable men could draw from it. If this is the case, the court must determine whether the actor's conduct is a substantial factor in bringing about the plaintiff's harm, unless this question is itself open to reasonable difference of opinion, in which case it is for the jury." (*Id.,* at com. *c.*) Thus, two questions arise in this posture of the case. Have the summary judgment proceedings shown the material facts of the incident to be undisputed? If so, is the question of poor illumination as a causal factor in plaintiff's injury open to reasonable difference of opinion?

The state moved for summary judgment on the ground that "it cannot be liable for injuries caused by criminal conduct of third persons in the circumstances of this case." Its primary legal theory was that the claimed lack of lighting is not a basis of tort liability, "especially where there is no evidence

of prior repeated criminal activity of the same kind at this rest stop." As noted, this "special" consideration was discredited in *Isaacs, supra,* 38 Cal.3d 112. The fact that the trial court relied for its ruling upon this discredited rule is not consequential. ▆▆ "If the *decision* of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259, p. 266.)

▆▆ The state's theory in moving for summary judgment was adequate to put in issue both the circumstances of lighting that have a bearing upon liability and the special question of similar prior incidents. This is empirically shown in the kind of evidence that each party tendered. The state put on the facts of how the incident occurred, including facts about the lighting. Plaintiff put on facts concerning the lighting of the rest stop area which she perceived to bear on the incident. Plaintiff's showing is particularly detailed as to zones of shadow, specifically noting two areas of shadows in which an assailant might profitably lurk. Both are between the parking area and the restroom building.

In a summary judgment proceeding, inferences that may be reasonably deduced from the evidence must be drawn unless contradicted by other inferences or evidence. (Code Civ. Proc., § 437c, subd. (c).) "An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) On the facts adduced in the summary judgment proceedings the *only* available inference is that plaintiff's assailant was standing in the light when she saw him staring at her. Given the nature of the state's defense and the response tendered by plaintiff we reject as unreasonable speculation that other contradictory evidence exists but was not adduced in the summary judgment proceedings. Accordingly, there is no reason to submit the matter to a jury for resolution of a factual dispute.

Nor, on the undisputed material facts, is the question of proximate causation of harm by lack of sufficient illumination open to reasonable difference of opinion. As related, the theory of proximate causation here in issue is occasioning harm by providing an enhanced opportunity for its occurrence. Plaintiff's expert witness opined that the lighting condition creates a risk of injury from an assailant using the concealment provided thereby. But there is no basis in the facts presented to infer that the assailant made use of the shadows. The facts are undisputed that he was standing at the northeast corner of a building whose outside walls are well-illuminated. The only inference to be drawn is that he was standing in the light. Being bold enough to lurk in the open in the light, staring at women entering the rest-

room, it is fanciful to speculate that his direct path to the restroom entry might have detoured into and then out of the shadows.

Nor are we persuaded that the matter should go to the jury on the vague supposition that, notwithstanding that the assailant was standing in the light, even brighter lights might have deterred the assault. This theory has nothing to do with the creation of an opportunity to commit crime by providing a place of concealment. It is premised on the notion that the assailant's psychological propensity for crime is affected by the quantity of light. It is a theory of mood lighting. If liability may be premised solely on this notion, proprietors will become the insurers of the safety of persons on their premises, subject only to the caprice of particular juries. (See *7735 Hollywood Blvd. Venture* v. *Superior Court* (1981) 116 Cal.App.3d 901, 905 [172 Cal.Rptr. 528].) If we are unwilling as a matter of policy to insure against losses occasioned by crimes, we ought not foist that burden haphazardly on persons not at fault for criminal misbehavior. We conclude that the lighting condition was not a proximate cause of the assault.

The judgment is affirmed.

Puglia, P. J., concurred.

**SIMS, J.**—I concur in parts I and II, and in the result in part III of the majority opinion. I respectfully dissent from part IV, however, because the issue there addressed by the majority was not tendered by the State of California (State) in its motion for summary judgment and may not be resolved sua sponte in this court in favor of the moving party.

In part IV the majority consider and reject plaintiff's contention, as pleaded in her complaint, that poor lighting at the Dunnigan rest stop was a proximate cause of the assault and her resulting injuries. However a careful reading of the State's motion for summary judgment shows the State nowhere challenged plaintiff's pleaded contention that poor lighting was a contributing cause of *this* unfortunate incident. Instead, in its moving papers the State relied solely on the theory it was not liable *as a matter of law* because the alleged injury "was not caused by a condition of the property that was within the intended scope of a public entity's duty as contemplated by the Governmental [*sic*] Tort Claims Act."

The State's argument on the motion first contended inadequate lighting was not a dangerous condition of public property as a matter of law and the State had no duty to warn of possible criminal attacks. The State argued the criminal assault was a superceding cause of injury to plaintiff as a matter of

law. For these propositions the State cited *Hayes* v. *State of California* (1974) 11 Cal.3d 469 [113 Cal.Rptr. 599, 521 P.2d 855], *7735 Hollywood Blvd. Venture* v. *Superior Court* (1981) 116 Cal.App.3d 901 [172 Cal.Rptr. 528], *Sykes* v. *County of Marin* (1974) 43 Cal.App.3d 158 [117 Cal.Rptr. 466], and the then-extant opinion of the Court of Appeal in *Peterson* v. *San Francisco Community College District.* The State also argued it could not be held liable unless it was aware of a prior history of crimes at the rest-stop.

The trial court granted the motion in 1983 on the grounds asserted by the State. The court emphasized the rest stop had not been the scene of repeated criminal activity of the kind involved in this case. The court relied exten-sively on the opinion of the Court of Appeal in *Peterson* v. *San Francisco Community College District.* However, our Supreme Court granted a hear-ing in *Peterson* and later decided the case adversely to the position of the State here. (See *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799 [205 Cal.Rptr. 842, 685 P.2d 1193].) While the instant case was on appeal, our Supreme Court also decided *Isaacs* v. *Huntington Mem-orial Hospital* (1985) 38 Cal.3d 112 [211 Cal.Rptr. 356, 695 P.2d 653]. *Peterson* and *Isaacs* make clear that inadequate lighting can constitute a dangerous condition of public property. (*Isaacs, supra,* 38 Cal.3d at p. 130; *Peterson, supra,* 36 Cal.3d at p. 812.) *Isaacs* also held "foreseeability is determined in light of all the circumstances and not by a rigid application of a mechanical 'prior similars' rule. [Citations.]" (*Isaacs, supra,* at pp. 126-127.)

*Peterson* and *Isaacs*—both decided after the trial court granted summary judgment—therefore cut the legs out from under the trial court's ruling that the State could not be liable as a matter of law for inadequate lighting. More to the point, however, is that the motion was made and adjudicated on grounds having nothing to do with whether inadequate lighting was a prox-imate cause of plaintiff's injuries in *this* case. Thus, for example, the State made no argument to the effect that plaintiff's assailant was not concealed in shadows. Plaintiff therefore had no reason to present evidence in oppo-sition to a theory not tendered.

Where a defendant brings a motion for summary judgment, "the initial duty *to define the issues presented by the complaint* and to challenge them factually is on the defendant who seeks a summary judgment." (*Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630, 638-640 [177 Cal.Rptr. 445], italics added.) This is so irrespective of the fact the plaintiff will ultimately bear the burden of proof at trial. (*Ibid.;* 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 290, p. 589.) Defendant's mo-

tion must define the issues tendered by the complaint, and upon which summary judgment is sought, with sufficient particularity so that plaintiff will be put on reasonable notice a response is due.[1] Here, the State in its motion stood on the sole assertion it was immune from liability as a matter of law for the reasons previously noted. The State never went beyond its threshold argument to tender the issue whether, because of facts peculiar to this case, inadequate lighting was a proximate cause of the injuries suffered by plaintiff. An attorney reading the State's moving papers would not reasonably conclude the State was asserting that inadequate lighting did not cause plaintiff's injuries because, for example, plaintiff's assailant was visible from the parking lot. The State is therefore not entitled to summary judgment on the issue of inadequate lighting.

I wholly fail to understand why the majority's unfair rush to judgment is necessary. If, in fact, inadequate lighting was not a legal cause of *this* incident, the State can move for summary judgment in the trial court on that theory. If the motion is meritorious, it should be granted. But it should be granted only after plaintiff has had a fair opportunity to make a factual response to the State's theory of summary judgment.

Even assuming arguendo the question of causation in this case was tendered as an issue, the majority err in upholding summary judgment on the question of inadequate lighting. "The summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution. (*Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 556 [122 P.2d 264].) Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. (Code Civ. Proc., § 437c; *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822].) [¶] 'The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory.' (*Lipson* v. *Superior Court, supra,* 31 Cal.3d at p. 374.) 'The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion.' (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 436-439 [74 Cal.Rptr. 895, 450 P.2d 271]." (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134].)

---

[1] Subdivision (b) of section 437c of the Code of Civil Procedure now provides in pertinent part: "The supporting papers shall include a separate statement setting forth plainly and concisely all material facts which the moving party contends are undisputed." Had this specified procedure been followed, there would be no uncertainty as to the aim of the motion in the instant case. However, this procedure was added by amendment of the statute in 1983 (Stats. 1983, ch. 490) and was not in effect when the instant motion was adjudicated.

Presumably because the State did not assert in its motion a failure of proximate cause between the lighting and *this accident,* plaintiff herself did not submit a declaration detailing the position of her assailant with respect to the lighting. However, as noted by the majority, plaintiff submitted a declaration by an ex-police officer who was an expert in the prevention of crime by the design of structures. The expert stated, inter alia, he had performed tests of illumination values of lights at the rest stop. The tests showed the lighting did not meet nationally-recognized standards. Moreover, placement of a high pressure sodium light "in an alcove setting creates a broad band of darkness and shadow in the areas just in front of the approach to the women's restroom." The expert opined the rest stop was in a dangerous condition due to inadequate lighting at the time of the attack on plaintiff.

The majority rely on facts taken from the police report of the incident which is attached as exhibit B to the State's motion for summary judgment.[2] The police report states that "vict. states that she (vict.) then walked to the restroom building at said rest stop. Vict. stated that as she was entering said women's restroom she observed a male subject standing at far (N/E) corner of building (outside) Vict. stated that said male subject stared at vict. as she approached the entrance." The report also notes that "The interior of restroom and outside walls of building are well illuminated."

The majority infer from the police report's assertions that the male subject was standing "at far (N/E) corner" and that the "outside walls of building are well illuminated" that the subject was standing in bright light, i.e., that he was "bold enough to lurk in the open in the light." (Majority opn. at p. 211.) With respect, this inference does not comport with a strict construction of affidavits supporting motions for summary judgment. Properly construed, the police report admits of nothing more than that the assailant stood in enough light to let the victim see, at close range, that he was staring at her. The police report cannot be used to infer plaintiff was standing in bright light. The degree of illumination sufficient to allow plaintiff to observe her assailant at close range is not necessarily the degree of illumination required to serve the obvious deterrent function of lighting. Nor does such illumination constitute a reasonably safe design as a matter of law. Consequently, the fact that plaintiff could see her assailant is insufficient to entitle the State to summary judgment.

---

[2]No objection to the veracity of facts set forth in the report was made in the trial court. "Evidentiary objections not made either in writing or orally at the hearing shall be deemed waived." (Code Civ. Proc., § 437c, subd. (b).)

I would reverse the summary judgment with directions to enter a summary adjudication of issues as to the matters discussed in part III of the majority opinion.

Appellant's petition for review by the Supreme Court was denied May 22, 1986. Bird, C. J., was of the opinion that the petition should be granted.