[Civ. No. 9051. Second Appellate District, Division One.—June 3, 1935.]

S. L. BOUGHN, Guardian ad Litem, etc., et al., Respondents, v. LOS ANGELES CITY SCHOOL DISTRICT OF LOS ANGELES COUNTY et al., Appellants.

Everett W. Mattoon, County Counsel, and S. V. O. Prichard and Beach Vasey, Deputies County Counsel, for Appellants.

Jennings & Belcher for Respondents.

ROTH, J., *pro tem.*—Appellants, comprising the members of the Board of Education of the Los Angeles City School District of the County of Los Angeles, the Superintendent of the District and the district itself, a public corporation, appeal from the judgment rendered against them and in favor of respondent Marian Boughn, a minor of the age of eleven years, suing by her guardian *ad litem,* S. L. Boughn, her father. On June 18, 1931, while attending the Wilshire Crest School in the said city school district, the minor, contrary to the regulations of said school which she testified had been impressed upon her on a number of occasions and which she admits she knew, played tag in the girls' rest room located in one of the school buildings. In the course of the game she bumped into a pipe upon which a faucet was mounted, the pipe and faucet protruding from one of the walls approximately two and one-half to three inches. The trial court found that "the said projecting water faucet was exposed without proper or any shields or guards thereon", and that appellants "negligently and carelessly maintained and operated the premises . . . and particularly the . . . girls' lavatory thereof, in a dangerous and defective manner . . . " The evidence is conflicting as to whether the minor at the time of the accident was running, skipping or walking. It is difficult, however, to visualize a game of tag being played at a walk. Further, it is difficult to understand how the

minor could have suffered the cut or gash on the inside of her leg, which she suffered as a result of a collision with the faucet, and which the trial court found to be "one inch deep and 4 inches long", if she merely walked into the faucet. Irrespective of the conflict in the testimony on this phase of the case, however, it appears without contradiction that the minor did not look where she was going. She testified: "I was not running. I was looking back over my shoulder to see if I could see anybody back of me. I was going to tag them. While I was going with my head looking back over my shoulder, I ran into this faucet. No, I walked into it. I mean I bumped into it. No, I was not running then. I am sure of that now."

The minor also testified that she had attended Wilshire Crest School for a period of five years and had for two years prior to the accident used the rest room or lavatory in question, and that she and the other pupils had been instructed how to use the lavatory. These instructions were to the effect that she was not to run in it or play games in it, but she and the other pupils were to go in the lavatory by one door designated as the means of entrance, and then proceed around by the windows, use the wash basins, and pass out by another door designated for that purpose.

■ We feel that it is unnecessary to discuss the question of whether or not the child was guilty of contributory negligence, since we are convinced that the court's finding of negligence on the part of defendants is not supported by the evidence. The most complete description of the faucet or pipe in question is that given by the child's father who surveyed the premises immediately after the accident. His testimony is summarized in the bill of exceptions as follows: "It looks like the faucet, but hardly looks like the end of the faucet. I saw a faucet in the position appearing in that picture. Well, if there was any difference it was apparently that this—it looks like there has been a cap or something put on the end of that. I should say that this faucet extended about two and a half or three inches from the wall. Well, that part that the water comes out, evidently that extended out there about an inch and a half, and then there is this part from here is apparently about another inch or inch and a half. By 'this part' I refer to the part where the handle goes on. . . . Well, it was rather a square propo-

sition that came out there; evidently so that the faucet would have another—the turning part would have another handle. That square was about as big around in reference to a common object such as a pen or pencil, as a pencil. Slightly smaller than the pencil that is now shown. . . . I would say about a quarter of an inch, yes.''

The child in describing the object in question said: ''The pipe was longer and sharper than it is in the picture. The end of the pipe was sharper. The end that stuck out was sharper. I don't remember whether the one that stuck down was any different. The one that stuck out, as I remember now, stuck out still further and it was sharper, the end of it. I don't remember what the end looked like, as I saw it on the day of the accident, after I was hurt—in relation to any other object—how sharp it was. It looked sharper than the picture represents it.''

To hold that the maintenance of the faucet, as described, in a place such as a lavatory is negligence, is to say that the only way that a school district could escape a charge of negligence predicated on facts such as in the case at bar, would be by building a faucet of the type described in places such as a lavatory by recessing the same in the walls. It is clear from the facts detailed that even if the faucet in the case here had a guard or shield, or both, the accident such as described here would have occurred. If the faucet had a guard or shield, the injury might have been more or less, depending on the nature of the guard or shield and the manner in which contact with the same occurred. We have been cited to no case which holds on similar or analogous facts that the maintenance of a faucet which protrudes from two and one-half to three inches from the wall is negligence, and we know of none. Common sense suggests that to hold a school district negligent under such circumstances is to say that the school district must so build and maintain its premises as to preclude possibility of injury. Under such a rule if a kindergarten pupil, who it is fair to assume could not under any circumstances be charged with contributory negligence, ran into a door knob, the school district would be responsible. We have also heard of and observed minors of kindergarten age falling down steps especially constructed for minors of that age, does this mean that the school district

is under the duty to build inclines rather than steps? The possibilities of such a rule may be multiplied *ad infinitum.*

Section 2, chapter 328, Statutes of 1923, reads as follows: "Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing or managing board of such county, municipality, school district, or other board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, building, grounds, works or property and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition."

In our view of the matter the faucet in question was not a dangerous or defective condition, and the evidence does not sustain the finding of the trial court that defendants "negligently and carelessly maintained and operated the premises . . . and particularly the . . . girls' lavatory thereof, in a dangerous and defective manner . . . "

The judgment is reversed and the court is directed to enter judgment in favor of the defendants.

Houser, Acting P. J., and York, J., concurred.