[Civ. No. 12818.   First Dist., Div. Two.   June 1, 1945.]

SYBIL BELCHER, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

Vincent Surr for Appellant.

John J. O'Toole, City Attorney, Albert F. Skelly, Deputy City Attorney, Lawrence S. Mana and Joseph Murphy for Respondent.

GOODELL, J.—This is an appeal from a judgment in favor of the defendant, entered after its demurrer to the complaint had been sustained.

The complaint seeks damages for personal injuries suffered by the plaintiff, a pedestrian, when she was blown over and fell to the sidewalk during a strong wind. The action is based upon the Public Liability Act of 1923 (Stats. 1923, p. 675; Deering's Gen. Laws, 1944, Act 5619) and on this appeal the plaintiff "rests upon two alternative omissions constituting negligence" which, she claims, constantly render the street in question "dangerous when the wind blows hard," i. e., the absence of a handrail from steps in the sidewalk in question, and the absence of a sign or notice warning pedestrians that the street or steps are dangerous on windy days.

The complaint shows that Taylor Street in San Francisco runs approximately north and south and descends steeply from California Street to Pine Street; on the westerly side of Taylor Street in this block is a flight of concrete steps carved out of part of the sidewalk. These steps "are perhaps six or eight feet broad, and afford a tread of perhaps sixteen inches, while the rise from step to step is very moderate, perhaps six or eight inches of a drop." On the easterly side of Taylor Street at the corner of California is a lofty apartment house; opposite it on the westerly side of Taylor is a high brick wall, and (to quote) ". . . this apartment house and this wall form a sort of artificial canyon along which, sometimes up and sometimes down, according to whether the wind is blowing from the south, or from the north, the wind at times attains a great velocity and strength. . . ." Further, "That by reason of the steepness of the descent along Taylor street from California street to Pine street, few would be disposed to use it were it not that the city, many years ago added to the charm and attractiveness of Taylor street" by building this flight of concrete steps. "In short," it is stated, "the steps are so well done, that everybody is tempted to

make use of them, and to select Taylor street in preference to many other streets, as the finest thoroughfare and mode of egress'' from the hilltop to the lower levels. And further: ''That several times a year, and every year, and usually, but not always, continuing for three consecutive days, San Francisco is subject to a peculiar wind, known as the north wind, blowing chiefly from the north or northeast, which wind has various 'earmarks' that are recognizable. . . . It is a very gusty wind. It is a severe wind. . . . That when such a wind blows, the steps above described become dangerous, by reason of their seductive and enticing nature. That the negligence of which plaintiff herein complains is that these otherwise perfect steps have no handrail. They have no steel or other posts from which a heavy chain is or could be fastened, 'festooning' as a parabola from one post to the next, which in such time of danger one could grasp and save herself from being blown over. There is no warning posted anywhere to inform one that said street or said steps are dangerous on windy days. Thus the pedestrian is and in this instance was 'caught' before aware of it, and does not know that she is in the 'draw' of the wind on Taylor street before it is too late to do anything to escape therefrom; That in these omissions, plaintiff avers that the City of San Francisco has been and is negligent, and endangers life and limb of its inhabitants.''

The complaint then alleges ''That on or about the 12th day of February, 1944, one of these so-called 'north winds' was blowing in San Francisco, more or less from the northeast'' and the plaintiff, who is tall and ''fairly athletic'' was walking downtown between 11 a. m. and 12 o'clock noon. ''Accordingly,'' it is averred, ''and without any inconvenience or any danger from the wind, she walked east along the south side of California safely to Taylor street; then she turned south and started to descend the steps on the west side of Taylor street to go to Pine street; but she had only proceeded a few steps down Taylor street when the northeast wind blowing at her back assembled beyond her strength and seized her and threw her down and injured her. . . .''

The complaint alleges that the defendant municipality ''has always known that there was no handrail or other protection on said steps, and . . . that there is not nor has there ever been any notice placed to warn pedestrians to keep off

said street in windy weather. . . ." Also that the records of the Weather Bureau show that at 11:28 a. m., which was about the time of plaintiff's injury on February 12, 1944, a northeast wind was blowing at a velocity of 24 miles per hour. The same records show that the maximum velocity in March, 1943, was 26 miles per hour, in April, 1943, 28, in May, 1943, 34, and that in December, 1943, it was as high as 35 miles per hour. In January, 1944, it was 25 and in February, 1944, 24 miles per hour. It alleges that the municipality has knowledge of the velocity and nature of its winds and of the unprotected condition of the steps in question.

A claim was presented to the city and rejected.

The facts alleged in this complaint present a novel case— one of first impression. In the first place it will be observed from the pleader's rather elaborate description of the stairway that no claim is made that there is anything dangerous in the design or construction of the steps themselves. And it is not alleged that there were any irregularities or defects such as holes, ridges, or upraises upon which a pedestrian might trip or by which one might be entrapped (as appear in so many cases, such as *Whiting* v. *City of National City,* 9 Cal.2d 163 [69 P.2d 990]). On the contrary there are affirmative allegations which frankly concede that "the steps are so well done that everybody is tempted to make use of them, and to select Taylor street in preference to many other streets, as the finest thoroughfare and mode of egress." They are characterized as "otherwise perfect steps" in connection with the allegation "That when such a wind blows, the steps above described become dangerous, by reason of their seductive and enticing nature. *That the negligence of which plaintiff herein complains is that these otherwise perfect steps have no handrail.*" What we have just emphasized seems to be the gist of plaintiff's case. With respect to this novel contention the respondent says: "If appellant's complaint sufficiently alleges a cause of action on account of a dangerous condition which existed as a result of the failure of the City and County of San Francisco to maintain a handrail along Taylor Street between California and Pine Streets, it would necessarily follow that the City and County of San Francisco is honeycombed with dangerous conditions of its public streets. In other words, on every one of the streets on its many hills the City and County of San Francisco would be required to erect and maintain handrails. The absurdity of this line of

reasoning was recognized by the District Court of Appeal in *Boughn* v. *Los Angeles City School District,* 7 Cal.App.2d 347 [46 P.2d 223], which pointed out to hold a municipal corporation liable under such circumstances is to say that it must so maintain its property as to preclude the possibility of injury." To which the appellant replies: ". . . Respondent argues that if the City is at fault on Taylor street, it will be also at fault elsewhere. That is not an argument against culpability." In the Boughn case, at page 350 the court said: "We have been cited to no case which holds on similer or analogous facts that the maintenance of a faucet which protrudes from two and one-half to three inches from the wall is negligence, and we know of none. Common sense suggests that to hold a school district negligent under such circumstances is to say that the school district must so build and maintain its premises as to preclude possibility of injury." And so in this case, the appellant, *whose burden it is to show an actionable wrong,* has cited no authority whatever where, under facts and circumstances anywhere nearly comparable or similar to those alleged in this complaint, a municipality, or any other defendant, has been held liable. The appellant observes that the respondent does not quote from a single case attempting to *absolve a city from a charge of negligence* in such circumstances, but the burden is upon the appellant, of course, to convince the court that there is legal responsibility in this case. The only "wind" case cited by the appellant is *Smith* v. *San Joaquin L. & P. Corp.,* 59 Cal.App. 647 [211 P. 843], where this court held in a case where the plaintiff, a child, was burned by a hanging live wire, that defendants' failure to protect its power line from the blowing of the parts of a tree against it, in a wind, was an act of neglect rather than an act of God.

The appellant cites numerous authorities in support of her contention that a wind such as that alleged, is not an act of God. The respondent does not contend that it is, hence it is unnecessary to discuss appellant's authorities on that point.

Again, cases are cited by the appellant on the subject of knowledge by the city of the condition of the steps and the absence of a handrail. The complaint alleges that the city itself built these steps many years ago, and that it "has always known that there was no handrail or other protection on said steps, and . . . that there is not . . . any notice placed to warn pedestrians to keep off said street in windy weather."

The demurrer of course confesses the truth of these allegations. See also *Fackrell* v. *City of San Diego,* 26 Cal.2d 196, 203 [157 P.2d 625] ; *Sandstoe* v. *Atchison T. & S. F. R. Co.,* 28 Cal.App.2d 215, 219 [82 P.2d 216] ; *Black* v. *Southern Pac. Co.,* 124 Cal.App. 321 [12 P.2d 981], and *Wise* v. *City of Los Angeles,* 9 Cal.App.2d 364 [49 P.2d 1122, 50 P.2d 1079] on the question of notice where a city has built the structure in question.

The other cases cited by the appellant are not helpful. Three of them are District Court of Appeal opinions later "set at large" and "vacated" (*Martin* v. *Howe,* 190 Cal. 187 [211 P. 453] ; *Estate of Stierlen,* 199 Cal. 140 [248 P. 509]) by the granting of hearings by the Supreme Court. The first was *George* v. *City of Los Angeles,* 71 P.2d 601, where judgment went for the city and the Los Angeles Gas & Electric Corporation. On appeal it was *reversed* as to the city and affirmed as to the Electric Corporation. In the Supreme Court it was *reversed as to both* (11 Cal.2d 303 [79 P.2d 723]). The second case was cited on duty to give warning of a dangerous place; it is *Melendez* v. *City of Los Angeles,* 60 P.2d 865, where the District Court of Appeal *reversed* a judgment for defendant entered on the sustaining of a demurrer. It was an attractive nuisance case where two boys were drowned in a pool of muddy water. The Supreme Court *affirmed* the judgment for the city (8 Cal.2d 741 [68 P.2d 971]) holding that a pond was not an attractive nuisance (reaffirming *Beeson* v. *City of Los Angeles,* 115 Cal.App. 122 [300 P. 993]) and from that it of course follows that there was no duty to warn of danger. The third case is cited on the question of constructive notice; it is *Whiting* v. *City of National City,* 61 P.2d 504, which, like the George case and the Melendez case, was a decision by the District Court of Appeal. It *affirmed* a judgment holding the city liable in a sidewalk tripping case. A hearing was granted by the Supreme Court, where the judgment was *reversed,* (9 Cal.2d 163 [69 P.2d 990]), the court holding that the defect was a minor one and that no injury would ordinarily be suffered therefrom when ordinary care was exercised in the use of the sidewalk.

In addition to claimed liability based on the absence of the handrail the appellant contends as her second point that the city was at fault in that "There is no warning posted anywhere to inform one that said street or said steps are dangerous on windy days." In the first place the city's knowl-

edge that no warning sign was posted, alleged as above, is admitted for the purpose of the demurrer. The question is whether the city is under the duty to give such warning under the circumstances alleged in this complaint. The accident is alleged to have happened in broad daylight, between 11 and 12 o'clock noon. The appellant is an adult, and is alleged to be "fairly athletic." A person is bound to use ordinary care for his own safety and to observe and take notice of all such dangers as could have been discovered by the observation of a person using ordinary care and caution, and possessed of ordinary sight and hearing. The condition of the steps and the force of the wind were such as to be taken in at a glance and in an instant by any reasonably prudent person. Wind is a force of nature to which all persons are of course subject. If danger existed it was open and obvious. While the city's general knowledge of its winds must be conceded, such knowledge is not superior to the knowledge and observation of an adult, and presumably reasonably prudent, person actually exposed to the wind. "To look is to see." There is nothing in the complaint to the effect that the appellant did not know that on a windy day Taylor Street between California and Pine Streets was "a sort of artificial canyon." The city is under no duty to warn a pedestrian of something he or she already knows or of a danger (if there be one) obvious to everybody.

It has been repeatedly held that a city is not an insurer of the safety of pedestrians but is required only to exercise ordinary care to maintain its streets in a reasonably safe condition for those using them. It has likewise been held that liability is not to be fastened upon a municipality merely because it may appear that certain property, in nowise dangerous either in its construction or intended use, could possibly be made safer by other means. (*Schmidt* v. *City of Vallejo*, 122 Cal.App. 5, 11 [10 P.2d 107].)

The instant case is an unusual one presenting facts of rare occurrence. The fact that appellant's counsel has been unable to furnish authorities dealing with any relatively similar set of facts, or even remotely approaching those in the case at bar, is further evidence of the rarity of the case. To hold on the facts alleged that liability existed either because of the absence of a handrail or the absence of a warning would unduly extend the scope of the Public Liability Law and go far toward establishing the rule that a municipality is an insurer.

"The statute of 1923 created a liability unknown to common law, and its application is to be strictly construed against the claim." *Whiting* v. *City of National City*, 9 Cal.2d 163, 165 [69 P.2d 990]. We are satisfied that the trial court was right in sustaining the demurrer.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 26, 1945.