Filed 10/29/15  Garnica v. City of Santa Clarita CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ERNESTO GARNICA et al., | B255524 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. PC051016) |
| CITY OF SANTA CLARITA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randy Rhodes, Judge.  Affirmed.

R. Rex Parris Law Firm, Robert A. Parris, Alexander R. Wheeler, Brendan P. Gilbert and Jonathan W. Douglass; Hacker Law Group and Jeffrey Hacker for Plaintiffs and Appellants.

Burke, Williams & Sorenson, Ronald F. Frank, Brian I. Hamblet and Malaika C. Billups for Defendant and Respondent City of Santa Clarita.

Hurrell Cantrall, Thomas C. Hurrell and Melinda Cantrall for Defendant and Respondent Los Angeles County Sheriff's Department.

_____

Plaintiffs[1] filed suit for dangerous condition of public property against defendants Los Angeles County Sheriff's Department (LASD) and City of Santa Clarita (City). (Gov. Code, § 835.)[2] The trial court granted defendants' motions for summary judgment, and plaintiffs appealed from the judgment. Finding no triable issue of material fact, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The case involves a two-vehicle accident at the intersection of Valencia Boulevard and Mall Entrance in the City of Santa Clarita. The accident occurred during the City's July 4, 2010 fireworks display at a shopping center immediately northwest of the intersection. Melissa Brown had just finished work and was driving east on Valencia Boulevard. She ran through a red light at Mall Entrance, and collided with a vehicle that was making a legal left turn from the opposite direction. Phillip Anderson, the other driver, was turning with the green arrow and had the right of way. He did not see Brown's vehicle until moments before the collision. The impact sent Brown's vehicle

---

[1] The plaintiffs are Ernesto Garnica, Eric Garnica, Joshua Garnica, Pedro Martinez, Heriberto Maldonado, Mario Galicia, Cecilia Galicia, Itzel Alylin Galicia, Metzli Galicia, Tlalli Galicia, Roman de Jesus, Ruth Espinosa, Antonio Lucas, Ignacia Juarez, Kimberly Lucas, Amy C. Lucas, Wendy Lucas, and Catalina Lucas (collectively, plaintiffs).

[2] Unless otherwise indicated, all further undesignated statutory references are to the Government Code.

Section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

2

veering over the curb of the southeast corner, where it hit a light pole, landed on the sidewalk, and struck numerous pedestrians. One person died (Matilda Garnica), and several were injured. Brown was convicted of felony vehicular manslaughter. (*People v. Brown*, Super. Ct. L.A. County, 2014, No. PA 069898.)

Plaintiffs—Garnica's family and those injured by Brown's vehicle—filed a claim under the Tort Claims Act based on a theory of dangerous condition of public property. After the claim was denied, plaintiffs filed the present lawsuit against numerous private and public defendants. Many defendants were dismissed; the two remaining are the City, which owns the intersection and sidewalk where the accident occurred, and LASD, which provided law enforcement, traffic, and other policing services to the City. The operative pleading, the second amended complaint, alleged claims for wrongful death, negligence, negligence per se, and nuisance.

The complaint does not contain a cause of action titled dangerous condition of public property, but the underlying theory of the complaint is that the City and LASD created a dangerous condition by allowing spectators to watch the fireworks display from the sidewalk, without providing barriers or other safety measures to protect against the risk of cars entering the sidewalk. Plaintiffs contend that a proper safety plan would have included additional street closures, lane restrictions, barricades, reduced traffic speeds, and traffic monitors.

LASD moved for summary judgment, or alternatively, summary adjudication. To the extent the complaint alleged a claim of dangerous condition of public property (§ 835), LASD argued the claim must fail because it is not the owner of the subject intersection and sidewalk, and it did not create or allow a dangerous condition to exist at that location.[3]

---

[3] LASD also argued that it is immune from liability under sections 815, subdivision (a) [unless otherwise provided by statute, public entity is not liable for injury arising from act or omission of public entity, public employee, or any other person]; 830.4 [failure to provide regulatory traffic control or speed restriction signs does not constitute dangerous condition]; 830.8 [public entity or public employee may be liable for failure to provide traffic or warning signals or signs if signal, sign, marking or device

3

Richard Cohen, the "Traffic Sergeant during the fireworks event," provided a supporting declaration. He stated that LASD does not own or control the intersection and sidewalk where the accident occurred. He explained that on the night of the accident, the traffic control devices at that intersection were functioning normally, there were no unusual roadway conditions, and there were no "physically damaging, deteriorating, or defective" conditions at the intersection.

The traffic collision report, accident diagram, and map of the fireworks area indicated the fireworks were launched from a rooftop northwest of the accident site. Given the direction in which Brown was traveling, LASD argued there was no evidence that she ran the red light because she was watching the fireworks. To the contrary, Brown testified at her deposition that she was "looking forward," and that she was not watching the fireworks or looking "somewhere else." In her testimony, she attributed her failure to stop at the red light to the distraction posed by the crowds, the noise, and "everything that was going on." At oral argument, both counsel agreed that by the time Brown reached the intersection where the accident occurred, the fireworks were to the left and somewhat to the rear of her vehicle.

The trial court granted the summary judgment motion of LASD "in its entirety." Section 835 requires a causal link between the dangerous condition and injuries suffered by plaintiffs, and the evidence did not indicate there was a dangerous condition at the intersection or sidewalk. The evidence was uncontroverted that all traffic control lights were functioning, there were no unusual roadway conditions, and there were no deteriorating or defective conditions of the street or sidewalk at the intersection. The traffic conditions at the time of the accident—the large crowds, heavy traffic, and noise— did not constitute a dangerous condition of the intersection and sidewalk, which, in any event, were not owned by LASD.

_____

(other than one described in section 830.4) was necessary to warn of dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, person exercising due care], and 845 [public entity not liable for failing to provide police protection service or, if police protection service is provided, for failing to provide sufficient police protection service].

The City also moved for summary judgment, or alternatively, summary adjudication. As to the dangerous condition claim (§ 835), the City argued that neither the intersection nor sidewalk posed a danger to pedestrians, there was no notice to the City of a dangerous condition at the intersection or sidewalk, and there was no causal connection between the condition of the intersection and sidewalk, and the injuries sustained by plaintiffs. The City's evidence showed that the intersection's accident rate was below the state average, the intersection's traffic signal plans were reasonable and in accordance with applicable traffic engineering standards,[4] this was the first accident during a City fireworks show, and this was the first incident in which pedestrians were struck by a car on a City sidewalk.

Plaintiffs argued that because traffic conditions during the event were more hazardous than usual, the design immunities asserted by the City were inapplicable. Plaintiffs contended the City was liable for failing to provide barriers, speed restrictions, or lane closures to keep motor vehicles away from spectators during the fireworks show. Plaintiffs asserted that the intersection and sidewalk were dangerous based on testimony by Cohen that the 45 miles per hour speed limit for Valencia Boulevard should have been reduced during the fireworks show to 5 or 10 miles per hour. Thomas Ayres, who has a background in psychology and human factors, testified that loud sounds can trigger a startle reflex that causes a driver to look away from the road and in the direction of the

[4] The City also argued that several plaintiffs lacked standing to sue for wrongful death because they were not the surviving spouse, child, or dependent parent of the decedent Matilda Garnica. As to the claims for wrongful death, negligence per se, and nuisance, the City argued that those claims were barred by the failure to comply with the Government Claims Act (§§ 911.2, 950.2, 950.6, 945.4). The City also relied on its immunity under sections 815, 818.2 [public entity not liable for adopting or failing to adopt enactment or failing to enforce any law], 820.2 [public entity not liable for injury caused by issuance or denial of issuance of approval, order, or similar authorization where the public entity is authorized by enactment to determine whether or not such authorization should be issued], 820.4 [public employee not liable for act or omission, exercising due care, in execution or enforcement of any law], 820.8 [unless otherwise provided by statute, public employee not liable for acts or omissions of another person], 821 [public employee not liable for injury caused by adopting or failing to adopt or enforce enactment], 830.4, 830.6 [public entity's design immunity], 830.8, and 845.

5

noise. In his opinion, the noise of the fireworks coupled with the presence of hundreds of spectators increased the risk of a driver missing a red light. That risk, in his opinion, could have been reduced by temporarily lowering the speed limit or placing traffic personnel at intersections around the shopping center. Deputy Mee testified that because of the distractions posed by the crowds, loud noises, and fireworks, "this was an accident that was just waiting to happen." Plaintiffs testified that on the night of the accident, they did not see any barriers, traffic cones, lane closures, or modified traffic signals to reduce the speed or volume of traffic on Valencia Boulevard.

The City argued there was no triable issue of material fact. Although Ayres identified potential distractions to the driver, those did not create a dangerous condition of the intersection or sidewalk within the meaning of section 830, subdivision (a). In light of Brown's testimony that she was not watching the fireworks as she ran through the red light, the location of the fireworks in relation to the intersection did not contribute to the injuries suffered by plaintiffs.

The trial court granted summary judgment to the City. It found there was no evidence of a dangerous condition of the intersection or sidewalk that increased the risk of harm to spectators, and that plaintiffs' injuries were caused by the negligent conduct of Brown. The court concluded the City was not liable under section 835. Based on its summary judgment rulings, the court entered judgment for the City and LASD. This timely appeal followed.

## DISCUSSION

In order to prevail on a motion for summary judgment or summary adjudication, a moving party defendant must show the cause of action lacks merit, in that one or more elements of the cause of action cannot be established, or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant makes this showing, the burden shifts to the plaintiff, who must demonstrate the existence of a triable issue of material fact. (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 849, 853.)

6

On appeal, the trial court's summary judgment ruling is reviewed de novo. (*Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1113.) We examine the record for triable issues of material fact and apply the same legal standard as the trial court. (*Ibid.*)

Plaintiffs contend the trial court erred in rejecting their theory that, in light of the large crowds, heavy traffic, and noise of the fireworks display, the City and LASD created a dangerous condition by failing to take adequate safety measures to protect spectators from the risk of vehicles entering the sidewalk. We disagree.

I

Section 835 governs a public entity's liability for a dangerous condition of its property. "Section 835 requires a plaintiff to show that the public entity's property was 'in a dangerous condition at the time of the injury' and that 'the *injury* was proximately caused by the dangerous condition.' (§ 835, italics added.) The statutory definition of "'[d]angerous condition"' similarly asks whether a condition of property 'creates a substantial . . . risk of *injury*.' (§ 830, italics added.) Thus, plaintiffs in this case must show that a dangerous condition of property—that is, a condition that creates a substantial risk of injury to the public—proximately caused" their injuries. (*Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099, 1106 (*Cordova*).)

"Dangerous condition" is defined as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).)

"A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably

7

foreseeable that it would be used." (§ 830.2.) "'The existence of a dangerous condition is ordinarily a question of fact; however, it can be decided as a matter of law if reasonable minds can come to only one conclusion concerning the issue.' [Citations.]" (*Sun v. City of Oakland* (2008) 166 Cal.App. 4th 1177, 1183.)

### A.      *Failure to Take Protective Measures*

Plaintiffs contend the City created a dangerous condition at the intersection and sidewalk by failing to take protective measures—such as providing a barrier, street closures, lane restrictions, barricades, reduced traffic speeds, and traffic monitors—to guard against the risk of a vehicle entering the sidewalk during the fireworks display. We conclude that under section 835, dangerous condition liability does not exist simply because a car entered a sidewalk that was crowded with spectators.

In *Campbell v. Santa Monica* (1942) 51 Cal.App.2d 626 (*Campbell*), the defendant city granted permits that allowed certain motor vehicles to use a pedestrian walkway—the Promenade—which had no barriers to protect pedestrians from the motor vehicles on the walkway. (*Id.* at p. 627.) The plaintiff, who was struck on the Promenade by a vehicle that did not have the required permit, sued the city for injuries caused by the dangerous condition of the walkway. (*Id.* at p. 628.) The jury found against the city, but the appellate court reversed. The appellate court concluded the mere fact that "vehicles can readily drive upon and along" the Promenade did not establish the existence of a dangerous or defective condition under section 835. (*Id*. at pp. 629–630.)

In *Shipley v. Arroyo Grande* (1949) 92 Cal.App.2d 748 (*Shipley*), the defendant city was sued by a pedestrian who was injured by a car that jumped the two-inch curb of a city sidewalk. The city demurred, arguing the sidewalk was neither defective nor dangerous. In affirming the order of dismissal, the appellate court observed that a "right of recovery could not arise from the presence of a 2-inch curb," given that in *Campbell*, *supra*, 51 Cal.App.2d 626, the plaintiff was denied recovery for injuries sustained on a sidewalk that "had no curb or barrier at all." (*Shipley*, *supra*, 92 Cal.App.2d at p. 750.)

8

In *Belcher v. San Francisco* (1945) 69 Cal.App.2d 457 (*Belcher*), the defendant city was sued by a pedestrian who was "blown over and fell to the sidewalk during a strong wind." (*Id.* at p. 458.) The fall occurred on "a flight of concrete steps carved out of part of the sidewalk." (*Ibid.*) The plaintiff argued the steps were dangerous due to the absence of handrails and lack of warnings to avoid the steps during strong winds. She conceded that in all other respects, the steps were "'so well done that everybody is tempted to make use of them.'" (*Id.* at p. 460.) The city obtained a dismissal based on the sustaining of its demurrer, and the appellate court affirmed. The court disagreed with the plaintiff's theory that the sidewalk was rendered dangerous by the absence of handrails. The plaintiff's theory would require handrails throughout the city "on every one of the streets on its many hills." (*Id.* at p. 460.) Warnings were not required because the dangers, if any, were obvious to "any reasonably prudent person." (*Id.* at 463.)

Based on *Campbell*, *Shipley*, and *Belcher*, we conclude the intersection and sidewalk were not rendered dangerous by the failure to protect against the risk of a vehicle entering the sidewalk. As the cases illustrate, a city is not required to maintain its streets and sidewalks to preclude all possibility of injury: "A city is not liable for injuries caused by motor vehicles merely because it may appear that its streets and curbs which are in no sense dangerous for careful use could possibly be made secure against peril by a more elaborate construction or by installing one of a simpler type." (*Shipley*, *supra*, 92 Cal.App.2d at p. 750, citing *Belcher*, *supra*, 69 Cal.App.2d at p. 463.)

The cases cited by plaintiffs are distinguishable. In *Quelvog v. City of Long Beach* (1970) 6 Cal.App.3d 584 (*Quelvog*), a pedestrian was struck and killed by an "autoette" on a public sidewalk. (*Id*. at pp. 585–586, 590.) In their dangerous condition lawsuit against the defendant city, the plaintiffs provided evidence that the city not only tolerated "wholesale violations" of the statute that prohibits driving on sidewalks, but "aided and encouraged" those violations by "providing convenient means of access" for autoettes to enter the sidewalk, which caused the public "to believe that the sidewalks could be used by the vehicles without interference by the police." (*Id.* at p. 589.) There is no comparable evidence in this case of vehicles being driven on City sidewalks.

9

In *Constantinescu v. Conejo Valley Unified School Dist.* (1993) 16 Cal.App.4th 1466 (*Constantinescu*), several students were struck by a car that jumped the curb in a school parking lot. (*Id.* at pp. 1468–1469.) In the plaintiffs' lawsuit against the school district, the evidence indicated that the school had created a dangerous condition by designating a small lot, originally designed for a different purpose, as a loading zone where numerous automobiles would converge at the same time, resulting in "chaotic traffic conditions." (*Id.* at p. 1474.) "Cars at times were angled towards the curb, pointing in the general direction of students, and with their engines running." (*Ibid.*) In affirming the denial of the defendant's motion for summary judgment, the court pointed out that "the District knew for years through its own principals how dangerous this loading area had become." (*Id.* at pp. 1474–1475; see *Swaner v. City of Santa Monica* (1984) 150 Cal.App.3d 789, 806 [order sustaining demurrer reversed based on triable issue of fact as to defendant city's knowledge that illegal motor vehicle racing was occurring on public beach].) Here, there is no evidence that spectators at prior fireworks shows had been injured by cars entering the sidewalk. The record does not support a reasonable inference that the City knew or should have known that the intersection or sidewalk was defective or dangerous.

According to plaintiffs, the City by providing portable restrooms and trash bins in a parking lot directly adjacent to the subject intersection had encouraged spectators "to gather in parking lots and along major streets and intersections that were adjacent to the Mall, including the intersection of Valencia Boulevard and Mall Entrance where the injuries occurred." But the theory falls short of establishing the existence of a dangerous condition at the intersection or sidewalk. Placing portable restrooms and trash bins in a parking lot does not impose an obligation on the City to indemnify spectators against the risk of being hit by a negligent driver on a sidewalk. We distinguish this case from *Constantinescu*, in which the school had designated the location where the injuries occurred as a student loading zone, and *Branzel v. City of Concord* (1966) 247 Cal.App.2d 68 (*Branzel*), in which the defendant city had designated the field where the injuries occurred as a site for flying model airplanes.

10

According to the City's evidence, this was the first accident during a fireworks display, and the first incident in which pedestrians were injured by a vehicle on a City sidewalk. Even assuming that the "general character of the event or harm" was foreseeable (*Constantinescu*, *supra*, 16 Cal.App.4th at p. 1474), there is no requirement "to provide curbs or other protective features throughout the [c]ity which would in all cases prevent negligent motorists from driving from the street onto the sidewalk and damaging property or injuring persons. (See *Shipley v. City of Arroyo Grande*, 92 Cal.App.2d 748; *Campbell v. City of Santa Monica*, 51 Cal.App.2d 626 . . . .)" (*Curreri v. San Francisco* (1968) 262 Cal.App.2d 603, 610 (*Curreri*).)

In *Curreri*, *supra*, 262 Cal.App.2d 603, the plaintiff was injured when a car jumped a curb while attempting to pull out of a parking space on a steep hill. The car was parked on a city street at a right angle to the hill. The driver's foot slipped from the brake to the accelerator, causing the car to jump over the low curb and strike a child who was sitting on the front steps of a building. The city was granted summary judgment by the trial court, but the appellate court reversed. It concluded there were triable issues of material fact as to whether the city, by allowing right angle parking on a steep hill, had created a dangerous condition for which precautionary measures—such as providing a higher curb, changing the angle of the parking spaces, prohibiting all parking on the street, or providing a barricade—were required. (*Id.* at p. 611.)

The present case is distinguishable. There is no evidence of a physical defect in the intersection or sidewalk. It does not involve the dangers of right-angle parking on a steep hill as in *Curreri*, or of dropping off and picking up students in a small congested school parking lot as in *Constantinescu*, or of flying a model airplane in a field near power lines as in *Branzel*.

In *Ducey v. Argo Sales Co.*(1979) 25 Cal.3d 707 (*Ducey*), the State of California was sued for injuries sustained when a vehicle "crossed a freeway median and collided head-on with [the plaintiffs'] automobile." (*Id.* at p. 711.) There was evidence the state was aware of the dangerous condition of the freeway, and had planned to install a median barrier at that location. (*Id.* at pp. 713–714.) The evidence at trial indicated that the

11

addition of a median barrier probably would have reduced or eliminated the risk of the head-on collision. In affirming the judgment against the state, the Court concluded the state had actual or constructive notice of the dangerous condition, and had "an affirmative obligation to take reasonable steps to protect the public against the danger." (*Id.* at p. 716.) In this case, although there had been other kinds of accidents at the subject intersection, none had involved a vehicle entering the sidewalk and striking a pedestrian.

Here, there is no evidence that the intersection or sidewalk was defective or dangerous for careful use. We therefore distinguish *Bonnano v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139 (*Bonnano*). In that case, the plaintiff was struck by a vehicle while crossing a dangerous intersection in order to reach a nearby bus stop. After settling her claim with the county, which owned the dangerous intersection, the plaintiff proceeded to trial against the transit authority, which had placed the bus stop next to the dangerous intersection. The jury found for the plaintiff.[5] The appellate court affirmed. The Supreme Court granted review, limited to "the question 'whether the location of a bus stop may constitute a dangerous condition of public property under Government Code section 830 because bus patrons will be enticed to cross a dangerous crosswalk to reach the bus stop.'" (*Id.* at p. 146.) In answering this question in the affirmative, the Court emphasized that it was not deciding whether the intersection was dangerous, but was *assuming* the existence of a dangerous crosswalk. (*Id.* at pp. 146–147; see *Joyce v. Simi Valley Unified School Dist.* (2003) 110 Cal.App.4th 292 [affirmed finding that appellant school district's open school yard gate was dangerous because of proximity to city's dangerous crosswalk].) *Bonnano* is not helpful to our analysis, given the Court's assumption that the intersection was dangerous. Similarly, in *Joyce*, it had

---

[5] The general rule is that a "public entity may be liable only for dangerous conditions of its own property." (Cal. Law Revision Com. com., 32 Pt. 2 West's Ann. Gov. Code (2012 ed.) foll. § 830, p. 7.) However, a public entity's property may be found dangerous if it "creates a substantial risk of injury to adjacent property or to persons on adjacent property." (*Ibid.*) In addition, a public entity's property may "be considered dangerous if a condition on the adjacent property exposes those using the public property to a substantial risk of injury." (*Ibid.*)

been determined in a prior proceeding that the city's crosswalk was dangerous. (*Joyce v. Simi Valley Unified School Dist.*, *supra*, 110 Cal.App.4th at pp. 295–296.)

*Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434 (*Brenner*) is instructive. In that case, a pedestrian was injured in an intersection that *lacked* traffic control devices. The city denied that the intersection was dangerous. The trial court sustained the city's demurrer based on the immunity provided by sections 830.4 and 830.8. The appellate court affirmed, stating that a "[p]roperty is not 'dangerous' within the meaning of the statutory scheme if the property is safe when used with due care and the risk of harm is created only when foreseeable users fail to exercise due care. [Citation.]" (*Id.* at p. 439.) Given the denial of the right of recovery in *Brenner*, in which the intersection lacked traffic control devices, we conclude that summary judgment was proper in this case, in light of the undisputed evidence that the traffic control devices were properly functioning.

### B.     Concurrent Negligence

Citing *Cordova*, *supra*, 61Cal.4th 1099, plaintiffs argue they are not required to prove the alleged dangerous condition played a causal role in the third party negligence that precipitated the accident.[6] We agree, but find no basis for reversal under *Cordova*.

*Cordova* involved a two-vehicle collision in which a negligent driver struck another vehicle, sending it onto a grassy center median where it crashed into a large magnolia tree, resulting in the deaths of several persons inside the vehicle. The plaintiffs sued the city, alleging the street "was in a dangerous condition because the magnolia trees on the grassy median were too close to the travel portion of the roadway, posing an unreasonable risk to motorists who might lose control of their vehicles." (*Cordova*, *supra*, 61 Cal.4th at p. 1103.) The city moved for summary judgment, arguing "that the undisputed facts showed that the street and median were not dangerous and that the

---

[6] *Cordova* was decided after oral argument in this case. We vacated the submission and invited the parties to provide additional briefing, which we have received and considered.

accident was caused by third party conduct, not by any feature of public property. (*Ibid.*) The plaintiffs obtained summary judgment against the city, which was affirmed on appeal.

The Supreme Court granted review, limited to whether the plaintiffs must prove a causal relationship between the alleged dangerous condition and the third party conduct that led to the accident. In concluding that summary judgment was improper, the Court stated that "nothing in the statute requires plaintiffs to show that the allegedly dangerous condition also caused the third party conduct that precipitated the accident." (*Cordova*, *supra*, 61 Cal.4th at p. 1106.)

In the present case, unlike *Cordova*, summary judgment was granted based on the lack of evidence of a defective or dangerous condition of the intersection or sidewalk. As discussed, the City is not the absolute guarantor of the safety of its streets and sidewalks. (*Shipley, supra*, 92 Cal.App.2d at p. 750.) Because the evidence does not support a finding that the intersection or sidewalk was unsafe to a person exercising due care, summary judgment was proper. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at pp. 849, 853.)

## II

Plaintiffs argue that LASD is liable for its failure to provide traffic and crowd control services during the fireworks show. The trial court granted LASD's motion for summary judgment in its entirety, including its claim of immunity under section 845. We conclude that summary judgment on that basis was proper.

In *Lopez v. Southern Cal. Rapid Transit Dist*. (1985) 40 Cal.3d 780, a transit district was sued by passengers who were injured during an altercation on a bus. The transit district's demurrer was sustained under section 845, but reversed on appeal. The Supreme Court concluded the causes of action were not barred by the immunity statute. The issue was not the failure to provide police services, but the failure by the bus driver to take *any* action during the altercation. The Court explained that a bus driver may take

14

"any number of 'precautionary measures,'" such as calling police, that fall short of providing police services. (*Id.* at p. 792.)

In *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112 (*Zelig*), the plaintiffs— "the minor children of a woman who was shot to death by her former husband in a Los Angeles courthouse"—sued LASD and the County of Los Angeles for failing to provide adequate security inside the courthouse. (*Id.* at p. 1118.) The trial court sustained the defendants' demurrers based on section 845. The Supreme Court concluded the demurrers were properly sustained under the immunity statute. (*Id.* at p. 1126.) The Court distinguished *Lopez*, in which the transit district's special relationship with its passengers required the bus driver to take *some action* to protect passengers from assaults by fellow passengers. *Lopez* "did not question that the public transit district would be immune had it been alleged that the district 'fail[ed] to provide police personnel or armed guards on board its buses.' [Citation.]" (*Zelig*, *supra*, 27 Cal.4th at p. 1145.)

Here, the allegations are similar to those in *Zelig*. LASD is being sued for the failure to provide traffic and crowd control services during the fireworks show, which is a failure to provide police services. Under these circumstances, the immunity under section 845 is directly applicable. Our conclusion is in accordance with *Zelig*.

## DISPOSITION

The judgment is affirmed. Defendants LASD and City are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.                    MANELLA, J.

15