Filed 3/12/26; Certified for Publication 4/1/26 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KAYLIN PAGAN, a Minor, etc.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF SAN RAFAEL,<br><br>    Defendant and Respondent. | A171344<br><br>(Marin County<br>Super. Ct. No. CIV1902225) |

      On a January afternoon in 2018, a day on which it had rained, 16-year-old Kaylin Pagan was a passenger in a car driven by her 16-year-old friend, Lesly Velasquez. They were driving on Lincoln Avenue in the City of San Rafael, in the vicinity where Lincoln Avenue turns left into another road. As Velasquez approached the turn the car hydroplaned and crossed over the double yellow line, and as Velasquez attempted to correct the situation, she oversteered, lost control, and the car went down a hillside, injuring Pagan. Through her guardian ad litem, Pagan filed a complaint against several defendants, including the City, alleging against it a dangerous condition of public property. The City moved for summary judgment, which the trial court granted, and entered judgment for the City. Pagan appeals. We affirm.

1

# BACKGROUND

## The General Setting

In the afternoon of January 4, 2018, 16-year-old Pagan was a passenger in a car being driven by her friend Velasquez, driving northbound on Lincoln Avenue in the City of San Rafael (the City), near where Lincoln Avenue curves to the left and turns into Los Ranchitos Road—a roadway later described in the accident report as " 'a relatively smooth and flat asphalt paved roadway.' " Velasquez was familiar with the road, having driven it three other times.

It had rained that day, both girls knew the road was wet, and Velasquez knew she had to be more careful. The speed limit on Lincoln Avenue as it approached Los Ranchitos Road was 30 miles per hour. Velasquez was driving between 30 and 40 miles per hour, and as she approached the curve, the car hydroplaned because of the wet roadway, and the back left side of the car crossed the double yellow lines into the southbound lane. Velasquez turned the car to the right and, as Pagan would later describe it, "began over-steering to try to correct the car" in order to avoid an oncoming car in the southbound lane. The car then moved "like a snake," i.e., fish-tailed left to right, Velasquez lost control of the car, and it went off the roadway on the righthand side and down a hillside. Pagan was injured.

Velasquez had a provisional driver's license, and both girls knew they were not supposed to be in the car together, as both had been specifically instructed by their parents: Velasquez's father told her she was not permitted to drive other students in the car alone; Pagan's mother told her not to ride in cars with any teenager who had a provisional driver's license. Velasquez was cited for violating the provisional license instructions (Veh.

2

Code, § 12814.6, subd. (b)(1)) and for making an unsafe turn (Veh. Code, § 22107). The traffic collision report determined that in addition to the unsafe turn, Velasquez's unsafe speed was an associated factor in causing Velasquez to lose control while navigating the turn.

**The Proceedings Below**

On June 7, 2019, Pagan, through her guardian ad litem, filed a complaint, which complaint is not in the record. We do not know what pleadings ensued, but on August 3, 2021, Pagan filed a second amended complaint (SAC), the operative complaint here. The SAC named as defendants Velasquez, her father, the City, the County of Marin, and the State of California. The claim against the City was for dangerous condition, and as to this Pagan's brief describes the pertinent allegations against the City this way:

"As alleged in the SAC, the subject roadway was defective and dangerous for numerous reasons, including but not limited to the following:

"a. There were no warning signs, lights or other mechanisms or devices alerting motorist traveling northbound on Los Ranchitos Road of the upcoming sharp left curve in the roadway;

"b. There were no warning signs, lights or other mechanisms or devices alerting motorist traveling northbound on Los Ranchitos Road to slow their vehicle due to a combination of a sharp curve and slippery roadway when wet conditions exist;

"c. There were no barriers of any kind; including but not limited to, curbs, guardrails, fences, walls, or similar devices or materials at the location where the subject Corolla left the roadway that would prevent a vehicle traveling northbound on Los Ranchitos Road from leaving the roadway and then go tumbling and/or rolling down a steep hillside embankment

3

immediately adjacent to the north-northeast side of the Los Ranchitos Road." In short, she alleged no warnings of an "upcoming sharp left curve," no warnings of a "combination of a sharp curve and slippery roadway," and "no barriers."

In light of what would become a significant—if not the most significant—part of Pagan's position below, we note that nowhere in these charging allegations is there any references to the roadway itself, no allegation, as her brief here would come to describe it, of a "severely damaged and crumbling pavement surface" or to "severe degradation, alligator cracking, delamination, potholes, settlement and depressions in the wheel path."

The record provided by Pagan contains nothing after the SAC until the motion involved here, filed some two and a half years later, specifically on January 26, 2024, when the City filed a motion for summary judgment or, in the alternative, summary adjudication, seeking summary adjudication of six specific issues, the fourth of which was "Is Plaintiff's Cause of Action for Premises Liability insufficient because the alleged defects are open and obvious." The motion was accompanied by a memorandum of points and authorities, over 200 pages of exhibits and evidence, and a request for judicial notice.

On April 30, Pagan filed her opposition, which included a 17-page memorandum of points and authorities and her evidence, the most significant of which was the declaration of Shakir Shatnawi, Professional Engineer, attached to which were four exhibits: his curriculum vitae; the traffic collision report; what he called the "Freeway Maintenance Agreement"; and

4

his "Expert Technical Report." Pagan did not oppose the City's request for judicial notice or submit any evidentiary objections.[1]

As to the arguments made in Pagan's memorandum, the focus was not on what Pagan pleaded in her SAC, but rather the roadway. For example, the "Statement of Facts" begins with this: "The January 4, 2018, rollover collision occurred because the vehicle in which Ms. Pagan was a passenger hydroplaned and lost control. The hydroplaning was caused by a severely damaged and crumbled pavement surface where the pavement completely lost its structural integrity and created a depression. The vehicle hydroplaned when it drove over the defective pavement section, plunging into a steep embankment that had no guardrail." And the statement went on, "[a]s of the May 17, 2022, inspection, the condition of the roadway at the accident site was documented to be poor with severe degradation, alligator cracking, delamination, potholes, settlement and depressions in the wheel path especially in the location where the subject vehicle lost control due to hydroplaning."

Pagan's substantive argument was similar, beginning this way: "Dr. Shatnawi's declaration and expert report concludes that the January 4, 2018, rollover collision occurred because the vehicle in which Ms. Pagan was a passenger hydroplaned and lost control. The hydroplaning was caused by a severely damaged and crumbled pavement surface where the pavement completely lost its structural integrity and created a depression. The vehicle hydroplaned when it drove over the defective pavement section, plunging into a steep embankment that had no guardrail. [Citation.] [¶] [¶]

---

[1] The trial court would later chastise Pagan's counsel for attempting to assert evidentiary objections in the course of her opposition, which the court noted was improper.

5

As of the May 17, 2022, inspection, the condition of the roadway at the accident site was documented to be poor with severe degradation, alligator cracking, delamination, potholes, settlement and depressions in the wheel path especially in the location where the subject vehicle lost control due to hydroplaning. . . ."

The roadway was also the focus of Dr. Shatnawi's opinion set forth in his declaration, as follows:

"7.  As detailed in my Report, the January 4, 2018, rollover collision occurred because the vehicle in which Ms. Pagan was a passenger hydroplaned and lost control.  The hydroplaning was caused by a severely damaged and crumbled pavement surface where the pavement completely lost its structural integrity and created a depression.  The vehicle hydroplaned when it drove over the defective pavement section, plunging into a steep embankment that had no guardrail. . . .  [¶] . . . .

"9.  The City of San Rafael and the County of Marin have failed to repair the roadway at the accident site.  My Report documents that the roadway at the accident site was defective and in a dangerous condition for many years.  On May 17, 2022, I observed the condition of the roadway at the accident site to be poor with severe degradation, alligator cracking, delamination, potholes, settlement and depressions in the wheel path especially in the location where the subject vehicle lost control due to hydroplaning."

On May 9, the City filed its reply, along with objections to Pagan's evidence, specifically objecting to Dr. Shatnawi's testimony, objections discussed in more detail below.  Suffice to say here that the City filed 45 separate objections directed to Dr. Shatnawi, the first 18 to specific portions of his declaration itself, the remainder to his report.

6

The motion came on for hearing on May 13, prior to which the trial court had issued a tentative ruling granting it. And on May 20, the trial court entered its order granting the motion, expressly adopting its tentative ruling, a tentative ruling that was comprehensive indeed, seven single-spaced pages. The trial court granted summary adjudication as to issue number four, that the conditions were open and obvious as a matter of law. With respect to the alleged dangerous condition of failure to warn of the slipperiness of the roadway, the trial court found that based on the City's evidence it was "undisputed[] that it had been raining on the day of the accident, that both Pagan and Velasquez observed that the surface of the road to be wet from the rain, and that Velasquez knew that when she was driving in the rain she had to be more careful than usual." The trial court also took judicial notice of the fact that a roadway may be slippery when wet from rain. Based on this, the trial court found the City had "carried its initial burden to establish that there is no material dispute as to the fact that the roadway at issue was obviously wet with rain and obviously carried the enhanced danger typically associated with a wet road, as compared with a dry one," and Pagan presented no evidence to counter the obviousness of the risk posed by the rain.

The trial court's ruling that the conditions were open and notorious meant that as a matter of law Pagan could not establish liability against the City. Thus, the trial court did not address issue nos. 1, 2, 3, 5 and 6. The trial court also did not rule on the City's evidentiary objections "because they were not material to its disposition of the motion," citing to Code of Civil Procedure section 437c, subdivision (q).[2]

_____

[2] Which provides as follows: "In granting or denying a motion for summary judgment or summary adjudication, the court need rule only on

7

Finally, the trial court noted the emphasis in Pagan's opposition on the roadway, noting that "Plaintiff spends much of her opposition advocating for a fourth 'dangerous condition'—that the roadway at the site of the accident featured 'severe degradation, alligator cracking, delamination, potholes, settlement and depressions in the wheel path[,]' and that this is what caused the vehicle to hydroplane. . . . Plaintiff's SAC does not plead this defect in the roadway surface as one of the 'dangerous conditions' on which her claim is predicated.  It pleads only the lack of any warning of the sharp left curve, the lack of any warning to slow down under wet conditions to accommodate the curve and the slipperiness of the roadway, and the lack of a barrier.

" 'The materiality of a disputed fact is measured by the pleadings, which "set the boundaries of the issues to be resolved at summary judgment." ' (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 [quoting *Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 648].)  As a result, '[t]o create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings. . . . As a result, Plaintiff cannot defeat summary judgment by relying-on a new legal theory relating to the cracked surface of the road."

Judgment was entered for the City, from which Pagan appealed.

## DISCUSSION

### Summary Judgment Law and the Standard of Review

Code of Civil Procedure section 437c, subdivision (c) provides that summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.

---

those objections to evidence that it deems material to its disposition of the motion.  Objections to evidence that are not ruled on for purposes of the motion shall be preserved for appellate review."

(Code of Civ. Proc., § 437c, subd. (c).)  As applicable here, a moving defendant can meet its burden by demonstrating that "a cause of action has no merit," which it can do by showing that "[o]ne or more of the elements of the cause of action cannot be separately established . . . ."  (Code of Civ. Proc., § 437c, subd. (o)(1); see also *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 486–487.)  Once a defendant meets this burden, the burden shifts to plaintiff to show the existence of a triable issue of material fact.  (§ 437c, subd. (p)(2).)

"On appeal '[w]e review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law.  [Citations.]' (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)  Put another way, we exercise our independent judgment, and decide whether undisputed facts have been established that negate plaintiff's claims. . . .

" '. . . [W]e accept as true the facts . . . in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them.'  [Citation.]  And we must ' "view the evidence in the light most favorable to plaintiff[] as the losing part[y]" and "liberally construe plaintiff['s] evidentiary submissions and strictly scrutinize defendant's own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiff['s] favor." '  (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 96–97.)"  (*Nazir v. United Airlines Inc.* (2009) 178 Cal.App.4th 243, 253–254.)

In addition to the above is the well-recognized admonition, set forth, for example, in *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230 this way:  "On review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court.  [Citation.] . . . '[D]e novo review does not obligate us to cull

9

the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues.  As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.  In other words, review is limited to issues which have been adequately raised and briefed.'  (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116.)"

**Dangerous Condition of Public Property**

Five years ago we had an appeal that involved a claim of dangerous condition of public property in the setting where the claimed dangerous condition was open and obvious, there, the effect of the glare of the morning sun:  *Thimon v. City of Newark* (2020) 44 Cal.App.5th 745 (*Thimon*).  The guardian ad litem for two sisters, one of whom was struck in a crosswalk, sued the City of Newark, which moved for summary judgment.  The trial court granted the motion, and we affirmed, in an opinion whose analysis began with this exhaustive discussion of the law of dangerous condition of public property:

"The governing law . . . is the Government Claims Act (Gov. Code, § 810 et seq. (the Act)).[3]  'Section 835 . . . of the [Government Claims] Act . . . prescribes the conditions under which a public entity may be held liable for injuries caused by a dangerous condition of public property.  [Citation.]  Section 835 provides that a public entity may be held liable for such injuries "if the plaintiff establishes [1] that the property was in a dangerous condition at the time of the injury, [2] that the injury was

_____

3    All further undesignated statutory references are to the Government Code.

10

proximately caused by the dangerous condition, [and] [3] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred.'  In addition, the plaintiff must establish [4] that either:  (a) '[a] negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition. . . , or' (b) '[t]he public entity had . . . notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.' " '  (*Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099, 1105 (*Cordova*).)

" 'The Act defines a " '[d]angerous condition' " as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830.)  Public property is in a dangerous condition within the meaning of section 835 if it "is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself." ' (*Cordova, supra*, 61 Cal.4th at p. 1105.) . . . 'A dangerous condition of public property can come in several forms and may be based on an "amalgam" of factors.' (*Salas v. Dept. of Transportation* (2011) 198 Cal.App.4th 1058, 1069 (*Salas*).)  'A condition is not dangerous "if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial, or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be

11

used." (§ 830.2.)' (*Cordova*, at pp. 1104–1105.)" (*Thimon, supra*, 44 Cal.App.5th at p. 753–754.)

And we went on to hold: "[A] public entity is not required to assume that third parties such as Soudachanh [the driver of the car] will act negligently or recklessly. 'As one court has observed, any property can be dangerous if used in a sufficiently improper manner. For this reason, a public entity is only required to provide roads that are safe for reasonably foreseeable careful use. [Citation.] "If [ ] it can be shown that the property is safe when used with due care and that a risk of harm is created only when foreseeable users fail to exercise due care, then such property is not 'dangerous' within the meaning of section 830, subdivision (a)." ' (*Chowdhury v. City of Los Angeles* (1995) 38 Cal.App.4th 1187, 1196.)" (*Thimon, supra*, 44 Cal.App.5th at pp. 754–755.)

In short, a public entity is only required to maintain its property in a way that is safe for "careful use." (*Chowdhury v. City of Los Angeles, supra*, 38 Cal.App.4th at p. 1196.) Or, as we put it in *Sun v. City of Oakland* (2008) 166 Cal.App.4th 1177, 1183: " 'If [ ] it can be shown that the property is safe when used with due care and that a risk of harm is created only when foreseeable users fail to exercise due care, then such property is not "dangerous" within the meaning of section 830, subdivision (a)' [citation.]." ' " (Accord, *Schonfeldt v. State of California* (1998) 61 Cal.App.4th 1462, 1466 [dangerous condition only if the property creates a substantial risk of injury when used with due care].)

We said in *Thimon* that " 'Ordinarily, the existence of a dangerous condition is a question of fact, but whether there is a dangerous condition may be resolved as a question of law if reasonable minds can come to but one conclusion. [Citation.] "[I]t is for the court to determine whether, as a matter

12

of law, a given defect is not dangerous.  This is to guarantee that cities do not become insurers against the injuries arising from trivial defects." ' [Citation.]"  (*Thimon, supra,* 44 Cal.App.5th at p. 755.)

Numerous decisions have affirmed summary judgment for various public entities holding as a matter of law that no dangerous condition was demonstrated, including opinions from this court (see, e.g., *Thimon, supra,* 44 Cal.App.5th at p. 755 and *Sun v. City of Oakland, supra,* 166 Cal.App.4th at p. 1197), and from our colleagues.  (See, e.g., *Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1348–1352 (*Cerna*).)  Here we add another.

**Summary Judgment Was Properly Granted**

To allege a claim for dangerous condition, plaintiff must "specify in what manner the condition constituted a dangerous condition."  (*Cerna, supra,* 161 Cal.App.4th at pp. 1347–1348; *Mixon v. Pacific Gas & Electric Co.* (2012) 207 Cal.App.4th 124, 131.)  We have quoted above Pagan's own description of what was alleged.  It did not include the so-called defective roadway—and thus cannot be the basis for Pagan to demonstrate a defective condition.

A summary judgment motion must show that the "material facts" are undisputed.  (Code Civ. Proc., § 437c, subd. (b)(1).)  Thus, the pleadings serve as the outer measure of materiality in a summary judgment motion, and the motion may not be granted or denied on issues not raised by the pleadings. (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258; see *Nieto v. Blue Shield of Calif. Life and Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74 ["the pleadings determine the scope of relevant issues on a summary judgment motion"]; *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493 [summary judgment defendant need only "negate plaintiff's theories of liability *as alleged in the complaint*; that is, a moving

13

party need not refute liability on some theoretical possibility not included in the pleadings," original italics].)

Pagan does not meaningfully attempt to argue that the supposedly damaged roadway was alleged in her SAC. Nor could she, as her attorney admitted at the hearing below, where as he described it Dr. Shatnawi's opinion is that "this road is defective for multiple different reasons. Most of them are in the amended complaint, and *one of them is not*."[4] (Italics added.)

We thus turn to the items alleged in the SAC, no warning signs, no guardrails, and Pagan's positions on them, all based on Dr. Shatnawi's opinion. But before doing so, we offer some comments on Pagan's briefing, particularly as it pertains to the evidence she claims supports her position. Pagan's opening brief lists these citations for claimed supporting evidence: "AA 404–408, 410–414, 445–466." The first pages are to Pagan's separate statement; the second to her appendix of evidence; and the third to Dr. Shatnawi's report. This same reference is repeated over 30 times in the brief in claimed support of all her arguments. The same 32 pages. It is manifestly improper.

As the leading appellate commentary describes the law: "Any statement in a brief concerning matters in the appellate record—whether

---

[4] While Dr. Shatnawi's views cannot be considered, we note that they would not assist Pagan in any event. For example, Dr. Shatnawi inserts Google images into his report claiming to show that the alleged "severe degradation" had existed for years, but never explains how the photos depict degradation of the road, let alone severe degradation. Beyond this, there is no evidence that there was any depression, settlement, or pothole in the roadway on the day of the accident. Finally, Dr. Shatnawi never connects his assumed facts that Velasquez drove over a depression with his ultimate conclusion that this is what caused the car to hydroplane, never explaining how a car can "hydroplane" due to a pothole or depression.

14

factual or procedural and no matter where in the brief the reference occurs—*must be supported by a citation to the record*. The purpose of this requirement is to enable appellate justices and staff attorneys to locate relevant portions of the record quickly. [Cal. Rules of Court, rule] 8.204(a)(1)(C); [citation]; *Helm v. City of Los Angeles* (2024) 101 Cal.App.5th 1219, 1228–1230, fn. 5–7—'It is not our role to scour the record to find evidence to support [appellant's] contention or create a triable issue of fact. That burden is [appellant's] alone']." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2025) ¶ 9:36 (Eisenberg).)

And the next section elaborates with this specificity: "**Form of citation**: Record citations must refer to the appropriate transcript, its *volume number* and *the exact page number* (e.g., 'I RT 25'). [Cal. Rules of Court, rule] 8.204(a)(1)(C); *Nazari v. Ayrapetyan* (2009) 171 [Cal.App.]4th 690, 694, fn. 1—'Plaintiff's single citation to a reporter's transcript with block page references, for example, "RT Vol. 6, 2480-2501," frustrates this court's ability to evaluate which facts a party believes support his position' (emphasis in original)." (Eisenberg, *supra*, ¶ 9:37, italics omitted.) In short, Pagan's brief does not comply with the law.

Despite this, we will nevertheless address Pagan's arguments, all of which rely on Dr. Shatnawi. And conclude that such reliance is misplaced, in light of the law regarding expert testimony.

A declaration stating an expert's opinion may be admissible to defeat a summary judgment motion, but only if the requirements for admissibility are established in the same manner as if the declarant were testifying at trial. (See *Towns v. Davidson* (2007) 147 Cal.App.4th 461, 472; *Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 541.) And Evidence Code section 801, subdivision (b) restricts expert testimony to opinions based on

15

"matter . . . perceived by or personally known to the witness" when that matter "is of a type that reasonably may be relied upon by an expert in forming an opinion . . ." An " 'expert opinion based on *speculation or conjecture* is *inadmissibl*e.' " (*Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457, 478, italics added.)

As mentioned above, the City's reply papers on the motion included 45 objections to Dr. Shatnawi's testimony, 18 to his declaration, the balance to his report. The 45 objections were precise and specific, each objection setting forth the basis—perhaps, more accurately, bases—of each objection, running the gamut, from hearsay, to lack of foundation, speculation, conjecture, no personal knowledge—many of which are, as will be seen, well-taken.

The facts upon which Dr. Shatnawi's opinions were based consisted of: the traffic collision report; the CalTrans Agreement; historical Google images; a site inspection performed in May 2022, almost 4 and 1/2 years after the accident; a California Manual on Uniform Traffic Control Devices ("MUTCD"), which is referenced but not offered as evidence; and a Caltrans Traffic Safety Systems Guidance, which is also referenced but not offered as evidence.

Turning first to Dr. Shatnawi's opinion as to a warning sign before the curve, his opinion is based on the MUTCD, generalized statements such as "[c]urve warning signs and advisory speed signs are traffic control devices that are necessary to protect the traveling public," and a few assumptions of fact.

Dr. Shatnawi relies on the MUTCD for his opinions that a warning was "required" for the curve, but the MUTCD is not offered as evidence. Instead, Dr. Shatnawi includes what purports to be excerpts from the MUTCD, in fact, excerpts from at least four different versions of the MUTCD. These

16

excerpts are hearsay, and Dr. Shatnawi does not establish that this hearsay is the type ordinarily relied on by experts in his field. (Evid. Code, § 801, subd. (b).) Nor can he, since he does not provide any detail about the MUTCD(s).[5]

More fundamentally, the excerpts provided by Dr. Shatnawi do not support the opinion. As one example, his report states that "[a]s can be seen in Figure 19 a proper sign is necessary per the [Manual]." But Figure 19 merely provides "Example warning signs for a horizontal curve," and an example of warning sign that *can* be used for a turn is not the same as *requiring* a warning sign for a turn. Finally, and as the trial court noted, any opinion by Dr. Shatnawi about what is "required" by the MUTCD is inadmissible expert opinion on questions of law or legal conclusions.

Dr. Shatnawi asserts that the City removed signs warning of the curve during the construction of a bike path, which Pagan uses as evidence that warning signs were required. However, Dr. Shatnawi has no foundation to make such statements, as he has no personal knowledge as to who removed signs, when they did so, or why.

---

[5] The trial court was critical of the MUTCD, saying this: " 'CA MUTCD' refers to the California Manual on Uniform Traffic Control Devices. (See Shatnawi Dec., Ex. 4, p. 4.) Nowhere in her moving papers does Plaintiff explain what this document is, who issued it, or what, if any, legal effect it has. To the extent the CA MUTCD has binding legal effect, any statements from Mr. Shatnawi, Plaintiff's expert, about what it 'requires' are inadmissible because 'an expert is not permitted to give an opinion on questions of law or legal conclusions.' (*City of Rocklin v. Legacy Family Adventures-Rocklin, LLC* (2022) 86 Cal.App.5th 713, 728.) Mr. Shatnawi's report describes the CA MUTCD as setting forth 'standards,' making it unclear that this document 'requires' anything. (Shatnawi Dec., Ex. 4, p. 14.)"

17

Dr. Shatnawi opines that the City was responsible for maintenance of the roadway at the accident site pursuant to a "Freeway Maintenance Agreement", which Pagan cites as evidence that the City should have repaired the allegedly deteriorated roadway. However, Dr. Shatnawi has no foundation to authenticate an agreement between the City and the State of California, let alone to opine about what this document does or does not obligate the City to do.

Finally, as to the lack of a guardrail, Dr. Shatnawi opines that the lack of a guardrail was a "factor[] that caused the severe crash . . . ." To begin with, Dr. Shatnawi never explains how the lack of a guardrail caused the crash, when the evidence is that Velasquez had already lost control of her vehicle before encountering the location where a guardrail would be placed. But beyond this, Dr. Shatnawi purports to quote excerpts from the "Guardrail Installation Criteria" apparently found in a Caltrans 2017 Traffic Safety Systems Guidance, which is not attached to his report and is therefore hearsay. (Evid. Code, § 801, subd. (b).) Regardless, Dr. Shatnawi notes that the installation criteria "provide criteria about when it [is] safer to install a guardrail" and then claims that, in this case, "it is safer to place a guardrail." Liability for dangerous condition cannot be premised on a claim that the property could have been made safer, as we ourselves have held. (See *Belcher v. City and County of San Francisco* (1945) 69 Cal.App.2d 457, 463 ["liability is not to be fastened upon a municipality merely because it may appear that certain property, in nowise dangerous either in its construction or intended use, could possibly be made safer by other means"].)

Pagan asserts that there was a "concealed trap." To no avail. As our colleagues in Division Four have held, there in a design defect case, the concealed trap principle is inapplicable where the alleged dangers are

18

reasonably apparent and would have been anticipated by a person exercising due care. (*Sutton v. Golden Gate Bridge, Highway & Transportation Dist.* (1998) 68 Cal.App.4th 1149, 1165.) And Pagan presented no evidence of a concealed trap for a person operating a vehicle with due care. As noted, the roadway was flat and "relatively smooth." Other than a general allegation that the curve was "sharp" and the roadway "slippery" from the rain, there is no evidence that anything about the curve was unusual, deceptive, or concealed from motorists. Velasquez herself admitted that she had previously driven in that exact location three times and thus was aware of the curve; she was also aware that she should drive with more caution when it is raining. There are no allegations, let alone evidence, that Velasquez could not see the curve in time to slow down, that vegetation or any other object obscured her view of the curve, or that the curve was sharper than permitted for the conditions.

Pagan claims the alleged dangerous condition was not obvious because "[r]oadway curves are considered locations for serious crashes that often result in injuries and death," asserts that proper signage warning of the curve was required, and then claims that the City removed signs that had previously been in place. But the sign issue has no bearing on whether the curve was obvious to northbound drivers exercising due care. If a condition is open and obvious, there is no duty to warn because the condition itself serves as a warning.

In *Thimon* we affirmed a summary judgment granted in the face of an expert opinion, doing so in language that can be said to be equally applicable here. We noted that the expert's opinion there did not create a triable issue of material fact for several reasons: "[f]oremost among them . . . that there is no evidence in the record to support these conclusory opinions. Also

19

problematic is the expert's failure to address the fact that, as pointed out by Newark's expert, with exceptions not relevant here, the provisions in the manuals he relied on provide only 'general guidance'; they do not set forth hard and fast rules for marking crosswalks but instead encourage government personnel to consider a list of factors in exercising engineering discretion to determine an intersection's design." (*Thimon, supra*, 44 Cal.App.5th at p. 759.)

The same is true here, as it has been in numerous other cases. (See, e.g., *Antenor v. City of Los Angeles* (1985) 174 Cal.App.3d 477, 484–485 [finding trivial defect as a matter of law despite expert's declaration that a dangerous condition existed]; *McKray v. State of California* (1977) 74 Cal.App.3d 59, 62–63; *Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 705.)

## DISPOSITION

The judgment is affirmed. The City shall recover its costs on appeal.

_____

RICHMAN, ACTING P. J.

We concur.

_____

MILLER, J.

_____

DESAUTELS, J.

(A171344N)

21

Filed 4/1/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| KAYLIN PAGAN, a Minor, etc.,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>CITY OF SAN RAFAEL,<br><br>　　　Defendant and Respondent. | A171344<br><br>(Marin County<br>Super. Ct. No. CIV1902225)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

　　　The opinion in the above-entitled matter, filed on March 12, 2026, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.


Dated: _____

　　　　　　　　　　　Stewart, P. J.

1

Trial Court:          Marin County Superior Court

Trial Judge:          Stephen P. Freccero

Counsel:

Law Offices of Ira Leshin, Ira Leshin for Plaintiff and Appellant.

Orbach Huff & Henderson, Kevin E. Gilbert, Kelly Houle-Sandoval for Defendant and Respondent.